These appeals arise from two asbestos litigation cases and require us to consider issues that are primarily procedural and jurisdictional in nature, issues relating to appellate jurisdiction, to the defense of the statute of limitations, and to the satisfaction of judgments.
The appeals had their genesis in two separate suits filed against various named and fictitious defendants by two separate plaintiffs, Wesley Stanley and Gerald Lucas. These suits asserted various claims against the defendants for injuries allegedly resulting from exposure to asbestos. The plaintiffs were both shipyard machinists, and, consequently, came into frequent contact with asbestos-containing products in the course of their work. The defendants were all manufacturers or sellers of asbestos-containing products used at the plaintiffs' workplace.
Although it was not named as a defendant at the commencement of these actions, both plaintiffs, by way of amended complaints, eventually substituted John Crane-Houdaille, Inc. (hereinafter "John Crane"), for one of the fictitious defendants named in each of their complaints. Prior to the trial, all of the defendants except John Crane settled with the plaintiffs. Lucas received $46,200 pursuant to the pro tanto settlement and Stanley received $141,500. Subsequently, the trial court consolidated the two cases for purposes of trial, and the parties proceeded to present their cases to the jury.
After hearing the evidence, the jury returned verdicts for the plaintiffs in each case. The amount of each verdict was $15,000, and the trial court entered judgments in favor of each plaintiff on the basis of the jury's verdicts.
John Crane filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial in each of the cases. As to the case involving the plaintiff Gerald Lucas, the trial court failed to rule on these motions within 90 days. Accordingly, pursuant to Rule 59.1, Ala.R.Civ.P., the motions were automatically denied, and John Crane now appeals from the judgment entered against it and from the trial court's failure to grant it a new trial in the case involving the plaintiff Lucas.
The case involving the plaintiff Stanley, however, took a far different procedural course than did the Lucas case. Although virtually identical post-trial motions were made by John Crane in the Stanley case, the trial court, unlike the Lucas case, did rule on these motions, denying the motion for J.N.O.V. but granting John Crane's motion for a new trial. In spite of the fact that John Crane got at least the alternative relief it requested under its motion for a new trial, it now appeals the denial of its motion for J.N.O.V., arguing that the trial court erred in failing to enter a judgment in its favor.
Although it is clear that the merits of the appeal involving the Lucas case are before us, we must consider whether we have jurisdiction to consider the appeal in the Stanley case. Before addressing the question whether we can reach the merits of the Stanley appeal, we first consider the merits of the Lucas appeal.
 I. The Lucas Appeal
This appeal presents the following two issues for our review: 1) whether Lucas's $46,200 settlement award satisfies the $15,000 judgment rendered against John Crane and 2) whether Lucas's action was time barred. For the reasons set out below, we resolve both issues in favor of Lucas and affirm the judgment.
 A.
On June 28, 1979, Lucas discovered that he was afflicted with asbestosis. Lucas *Page 1072 
had a one-year period after the date of this discovery within which to commence a civil action for damages. Tyson v.Johns-Manville Sales Corp., 399 So.2d 263 (Ala. 1981). Before the one-year limitations period expired, on June 26, 1980, he filed suit in the Circuit Court of Mobile County, alleging that his injuries were proximately caused by exposure to asbestos. The complaint stated a cause of action against several named defendants who manufactured asbestos products and 50 fictitious defendants. In the complaint, Lucas alleged that he was ignorant of the identities of the fictitious parties. On May 21, 1981, after the one-year limitations period expired, Lucas amended the complaint, substituting John Crane for one of the fictitious parties. The question before us is whether under Rules 9(h) and 15(c), Ala.R.Civ.P., the substitution of John Crane relates back to the time of the filing of the complaint and thereby precludes the one-year limitations period from barring Lucas's cause of action against John Crane. Because this issue implicates a fact question, we cannot conclude, as a matter of law, that Lucas failed to make a timely substitution under Rule 9(h).
An amendment substituting a real defendant for a fictitious one relates back to the date of the original complaint if the plaintiff stated a cause of action against the fictitious party in the body of the original complaint and if the plaintiff was ignorant of the identity of the fictitious party at the time of the filing. A plaintiff is ignorant of the identity of the fictitious party when at the time of the filing he lacks knowledge of facts indicating to him that the substituted party was in fact the party intended to be sued.Dannelley v. Guarino, 472 So.2d 983 (Ala. 1985);Alexander v. Scott, 529 So.2d 951 (Ala. 1988). The dispositive issue in the instant case concerns a disputed fact question — namely, Lucas's ignorance of the identity of the fictitious party at the time of the filing of the complaint.
John Crane interposed the affirmative defense of the statute of limitations in its answer and in its motions for directed verdict and J.N.O.V. As a part of its trial strategy, John Crane argued that, as a matter of law, the statute of limitations had run, and, accordingly, chose not to request that this issue be submitted to the jury. The import of John Crane's contention is that, due to Lucas's alleged non-compliance with Rule 9(h), the trial court should have adjudged his claim to be timebarred as a matter of law. In support of this contention, John Crane produced some evidence indicating that Lucas, at the time he filed the complaint, had knowledge of facts upon which to assert a cause of action against it. This evidence, however, was contradicted by Lucas's testimony at trial that he did not become aware of John Crane's use of asbestos until two months before trial:
 "Q. Do you know whether or not Crane packing material contained asbestos?
"A. Yes, sir, I do.
 "Q. Okay. When did you find out that Crane packing material contained asbestos?
"A. About two months ago.
"Q. How did you find out?
"A. I read a tag that said it has asbestos in it.
 "Q. Did anybody show you that tag, or did you stumble on it by yourself?
 "A. Robert Hendricks showed me the tag and I read it. It has asbestos fibers in it.
". . . .
 "Q. Up until two months ago when you and Mr. Hendricks saw that box of Crane packing, did you know that it contained asbestos?
"A. I didn't know it up until then."
Because this conflicting evidence presents a fact question, we cannot decide, as a matter of law, that Lucas failed to comply with Rule 9(h).
 B.
John Crane further argues that the $46,200 Lucas received from joint tort-feasors pursuant to a pro tanto settlement satisfies the $15,000 judgment rendered against it. The prevailing rule is that, under the single recovery concept, the *Page 1073 
amount of damages received by way of settlement from one or more joint tort-feasors is credited against the subsequent recovery from one or more remaining joint tort-feasors.
 " 'It is well settled that a person injured by joint tort-feasors may release one or more pro tanto and proceed against the others. The tort-feasors may plead the release as a bar to that amount paid by the released tort-feasor or may place it in evidence showing payment for the injury up to the amount shown in the release. Anderson v. Kemp, 279 Ala. 321, 184 So.2d 832 (1966). In lieu of allowing defendant to place the pro tanto
settlements into evidence, the trial court properly informed the jury of the total amount of the settlements and instructed them to subtract that figure, $145,000, from the full amount of damages, if any, sustained by plaintiff.' "
Tatum v. Schering Corp., 523 So.2d 1042, 1045 (Ala. 1988) (quoting Bucyrus-Erie Co. v. Von Haden,416 So.2d 699 (Ala. 1982). As the following jury instruction reveals, the trial court properly adhered to the rule of law articulated in Bucyrus-Erie:
 "You have heard evidence of a release by the plaintiffs of certain other defendants. The law says that the way we handle that is this: You take — if you find for the plaintiffs, you determine the total amount of damages which they would be entitled to recover under the principles of law that I have given to you and then from that sum you would deduct the damages which they have already received. And in the case of the plaintiff, Mr. Lucas, the sum that he has received is forty-six thousand two hundred dollars. And in the case of Mr. Stanley, he has received the sum of one hundred forty-one thousand five hundred dollars."
Later, the trial court gave the following explanatory instruction, which also conforms to the Bucyrus-Erie
rule:
 "I told you that if you — with respect to the pro tanto release by the plaintiffs, that you consider the total amount of damages which under the guidelines that I gave you if the plaintiffs are entitled to recover, you consider the total amount of damages and from that you would subtract the amount of settlement, even if the amount was zero. In other words, if you find that that was the extent of the damages, you would say: We, the jury find for the plaintiff and assess his damages at zero and just sign it if that be your verdict."
The jury returned a verdict in favor of Lucas, assessing his damages at $15,000. The record does not contain any evidence indicating that the jury's verdict was illegal; therefore, we must assume that the jury complied with the trial court's instructions.
 II. The Stanley Appeal A. The Jurisdictional Issue
Before reaching the merits of Stanley's appeal, we must first determine whether John Crane has a right to appeal from the grant of the new trial and from the denial of the J.N.O.V.
A litigant does not have a vested right to a review by an appellate court; rather he obtains a right to appeal, if at all, by grace of statute. State v. Seminole BottlingCo., 235 Ala. 217, 178 So. 237 (1938); Lewis v.Martin, 210 Ala. 401, 98 So. 635 (1923); State v.Bibby, 47 Ala. App. 240, 252 So.2d 662 (1971). Section12-22-2, Code of Ala. 1975, entitles litigants to appeal to this Court from any final judgment:
 "From any final judgment of the circuit court or probate court, an appeal lies to the appropriate appellate court as a matter of right by either party, or their personal representatives, within the time and in the manner prescribed by the Alabama Rules of Appellate Procedure." (Emphasis added.)
This statute embodies our time-honored rule that a final judgment is an essential precondition for appealing to this Court. Cates v. Bush, 293 Ala. 535, 307 So.2d 6, 8
(1975). Generally, the absence of a final order precludes us from exercising our jurisdiction. Id. However, this rule is not absolute. For instance, § 12-22-2 does not prohibit this Court from exercising its rulemaking authority to allow appeals from *Page 1074 
certain interlocutory orders. See, e.g., Rule 4(a)(1) and Rule 5 A.R.App.P. Similarly, the legislature has also provided that appeals may lie from either the grant or the denial of a motion for a new trial, in spite of the fact that the granting of a new trial suspends the finality of the judgment entered prior to the granting of the motion. Ala. Code (1975), § 12-22-10. Section 12-22-10, in pertinent part, states:
 "Either party in a civil case . . . may appeal to the appropriate appellate court from an order granting or refusing a motion for a new trial by the circuit court."
It is against the background of these statutes and rules, therefore, that we consider whether John Crane may appeal to this court and assert as error the denial of its motion for J.N.O.V.
Section 12-22-10, by its literal terms, addresses only the post-judgment motion for a new trial. Absent the statute (as is the case in the federal system, see Lowe v. GeneralMotors Corp., 624 F.2d 1373 (5th Cir. 1980)), the granting of a new trial (which is an interlocutory order) will not support an appeal; and an alleged trial error would have to await the completion of a second trial, and thus a final judgment, before it could be reviewed on appeal. Given the statute, an interlocutory order granting a new trial is appealable.
Because the trial court granted a new trial, it would appear that John Crane's "appeal" from the adverse ruling denying its motion for J.N.O.V. is a futile attempt to have this Court review an interlocutory order. Indeed, an order denying a J.N.O.V. motion, standing alone, would be a final judgment and subject to review by way of an appeal; but, when coupled with the order granting a new trial, as in this case, the denial of J.N.O.V. is not a final judgment, and, as such, it is not appealable. Thus, it would seem that John Crane's successful motion for a new trial aborts its right of appellate review of its unsuccessful motion for J.N.O.V.
Despite its logic, we find this analysis of the issue to be overly technical. While we cannot reject, out of hand, the objective fact that the denial of the J.N.O.V. motion is interlocutory in face of the granting of the new trial motion, we are not compelled to the conclusion that the J.N.O.V. denial is not an appealable order. Rather, prudence dictates that we re-examine the purpose and intent (and thus the spirit) of the statutory exception embodied in Code 1975, § 12-22-10. The answer, we believe, is found in the historical evolvement of our present A.R.Civ.P. 50 — the procedure for treating the "sufficiency" of the evidence on the one hand and the "weight" of the evidence on the other.
Alabama practice and procedure before the adoption of the present rules of civil procedure made no clear demarcation between these two concepts, as evidenced by the many cases that reversed the judgment for insufficiency of the evidence but remanded the case for a new trial. Neither of the two methods used to test "sufficiency" — demurrer to the evidence and the affirmative charge — ever evolved into a clearly defined mandate for the rendering of judgment for the successful movant in a post-judgment or appellate review. Indeed, the classical post-judgment method for testing the propriety of rulings with respect to "sufficiency" was the motion for a new trial. With the advent of the Alabama Rules of Civil Procedure, the evolutionary process culminated in the clearly defined procedure now provided in Rule 50.
Whether the "directed verdict/J.N.O.V." concept is denominated as a new creature or as an old
creature with new clothing and a new name is of little more than academic interest. Of practical significance, however, is the anomaly created by the literal reading of §12-22-10, which has not been amended to include "J.N.O.V.," along with new trial, for purposes of appealability. The serious consequences of this dilemma are obvious. Conceivably, the movant could suffer a series of adverse rulings on his J.N.O.V. motion in multiple trials of the same case; and, because he was successful in obtaining a new trial in each instance, he could not obtain appellate review of the adverse ruling on his J.N.O.V. motion until the completion of three trials. See Code *Page 1075 
1975, § 6-8-104. Surely, it is no answer to suggest that the movant could forgo his alternative new trial motion in order to obtain finality of the J.N.O.V. ruling.
Not only are these consequences not in keeping with the spirit and intent of the "new trial" rule provided in §12-22-10, allowing an appeal from an interlocutory order, but the result of not including "J.N.O.V." within the embrace of the statute's appealability concept runs counter to the mandate of A.R.Civ.P. 1, which states:
 "(c) Construction. These rules shall be construed to secure the just, speedy and inexpensive determination of every action."
It would be the height of irony to use the granting of the motion for a new trial to defeat finality of the J.N.O.V. denial, and at the same time not to use the statutory new trial right of appeal to permit appellate review of the J.N.O.V. denial. Additionally, we note that a holding in favor of appealability would not violate the fundamental principle of appellate review that prohibits review of an issue not ruled upon by the trial court. Indeed, the post-judgment J.N.O.V. motion was presented to the trial judge and was denied.
We hold, therefore, that John Crane's appeal, testing the court's ruling on the J.N.O.V. motion, is properly before this Court for review. For the sake of clarity, we note that John Crane, as the successful movant, has no right to appeal from the grant of the new trial, as it has attempted to do.Kemp Motor Sales, Inc. v. Lawrenz, 505 So.2d 377
(Ala. 1987); Osborn v. Johns, 468 So.2d 103 (Ala. 1985); Champion v. Central of Georgia Ry., 165 Ala. 551,51 So. 562 (1910); Karter v. Peck, 121 Ala. 636,25 So. 1012 (1899).
 B. The Merits.
John Crane makes the same two arguments against Stanley as it did against Lucas; and, for the same reasons upon which we based our decision in the Lucas appeal, we find them to be without merit and affirm the trial court's denial of its J.N.O.V. motion. Here again, we note that the trial court's grant of new trial is not before us for review.
First, John Crane argues that the trial court erred in not concluding that the settlement award Stanley received from joint tort-feasors satisfied the $15,000 judgment rendered in his favor. But, as we have already explained, settlement awards that plaintiffs receive from joint tort-feasors are factored into the equation by the jury to assess total damages. The total amount of damages in this case was a jury question, and we cannot say that the jury failed to consider the settlement award in determining damages. See the more complete discussion of this issue in part 1B.
Second, John Crane argues that Stanley failed to comply with Rule 9(h) and, therefore, that his action was time-barred. Stanley discovered his asbestos-related injury on August 6, 1979, and within one year after that date, on June 27, 1980, he commenced a civil action. SeeTyson, supra. In his complaint, Stanley named several fictitious defendants and alleged his ignorance of their true identities. On November 17, 1981, after the one-year limitations period expired, Stanley amended his complaint, substituting John Crane for one of the fictitious parties. As in the Lucas case, the dispositive issue in the Stanley case involves a disputed fact question: whether Stanley was ignorant of the identity of the fictitious party at the time he filed his complaint. Stanley testified that, at the time he filed his complaint, he had no knowledge of facts upon which to assert a cause of action against John Crane:
 "Q. Okay. In working with John Crane products, did you ever see a warning on any of their packages?
"A. No, sir.
 "Q. Did you ever see anything that said this product contains asbestos?
"A. No, sir.
 "Q. Okay. So for all you knew, it didn't contain asbestos?
"A. Sir?
 "Q. So for all you knew, it did not contain asbestos?
"A. That's right. It —"
In view of this testimony we cannot conclude, as a matter of law, that Stanley *Page 1076 
failed to make a timely substitution under Rule 9(h).
For the foregoing reasons, the judgment in the Lucas case (86-1123) is affirmed; and in the Stanley case (87-806) the denial of the J.N.O.V. is affirmed and the cause is remanded for a new trial.
86-1123 AFFIRMED.
86-753 DISMISSED.
87-806 AFFIRMED AND REMANDED.
TORBERT, C.J., and JONES, ALMON and SHORES, JJ., concur.