In this personal injury action, the plaintiff, William R. Stripling, alleged that he received cuts to the inside of his mouth and throat while drinking Coca-Cola Classic from a 20-ounce glass bottle. Stripling alleged that these cuts were caused by glass fragments inside the bottle.
Stripling sued Coca-Cola Bottling Company United, Inc., the bottler; and Anchor Glass Container Corporation, the manufacturer of the glass bottle,[1] and in his final amended complaint, he asserted claims based on negligence, wantonness, breach of warranty, and the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD").
The case was tried before a jury, and after Stripling had presented his evidence, Coca-Cola moved for a directed verdict. This motion was denied. Subsequently, the jury returned a general verdict in favor of Anchor Glass, but against Coca-Cola for compensatory damages of $1 and punitive damages of $34,000, apparently based on a finding that Coca-Cola had been guilty of wanton conduct. Coca-Cola subsequently filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial or a remittitur. Stripling also filed a motion for a new trial against both defendants.
The trial court, after being presented evidence that the jury had returned a quotient verdict against Coca-Cola, granted Coca-Cola's motion for a new trial as to all claims asserted by Stripling against Coca-Cola. The trial court denied Coca-Cola's motion for J.N.O.V., as well as Stripling's motion for a new trial against Anchor Glass.
Coca-Cola appeals the denial of its J.N.O.V. on the wantonness claim. Stripling cross appeals from the denial of a new trial on his claims against Anchor Glass. *Page 884 
I. Coca-Cola's Motion for J.N.O.V. on the Claim for Wantonness
We first address Stripling's argument that Coca-Cola's appeal from the denial of its J.N.O.V. motion is premature. We do not agree with Stripling's argument. This Court, in JohnCrane-Houdaille, Inc. v. Lucas, 534 So.2d 1070 (Ala. 1998), addressed the question of the finality of an order denying a J.N.O.V. when the trial court grants a new trial:
 "It would be the height of irony to use the granting of the motion for a new trial to defeat finality of the J.N.O.V. denial, and at the same time not to use the statutory new trial right of appeal to permit appellate review of the J.N.O.V. denial. Additionally, we note that a holding in favor of appealability would not violate the fundamental principle of appellate review that prohibits review of an issue not ruled upon by the trial court. Indeed, the post-judgment J.N.O.V. motion was presented to the trial judge and was denied."
534 So.2d at 1075.
Having resolved the question of Coca-Cola's right to appeal the denial of its motion for J.N.O.V., we now address Coca-Cola's argument that Stripling did not present "clear and convincing evidence"[2] that it was guilty of wanton conduct, so as to allow submission of the issue of its wantonness to the jury.
The standard applied on this Court's review of an order denying a motion for J.N.O.V. is the same standard used on review of an order granting or denying a motion for a directed verdict. Griggs v. Finley, 565 So.2d 154, 159 (Ala. 1990). "Granting a motion for JNOV is proper 'only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ' and the moving party is entitled to judgment as a matter of law." Alpine Bay Resorts, Inc. v.Wyatt, 539 So.2d 160, 162, (Ala. 1988), quoting Deaton, Inc. v.Burroughs, 456 So.2d 771 (Ala. 1984).[3] Whether the trial court erred in ruling on a motion for J.N.O.V. is tested by the purely objective standard of whether the party having the burden of proof has produced proof to create an issue requiring resolution by a jury. Smith v. MBL Life Assur. Corp.,589 So.2d 691, 696 (Ala. 1991). On review of a J.N.O.V., the evidence must be reviewed in the light most favorable to the nonmoving party. Id. The same principle would apply here, to our review of the denial of a J.N.O.V. motion.
The Legislature, in Ala. Code 1975, § 6-11-20(b)(3), has defined "wantonness" as "[c]onduct which is carried on with a reckless disregard of the rights or safety of others." This definition of "wantonness" is similar to what this Court said in Lynn Strickland Sales Serv., Inc. v. Aero-LaneFabricators, Inc., 510 So.2d 142, 145 (Ala. 1987), where the Court emphasized that wantonness requires some degree of consciousness on the part of the defendant that injury is likely to result from an act or omission, and stressed that *Page 885 
wantonness is not to be confused with negligence:
 "Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury. The element of intent, or knowledge, is not present in simple negligence, and the element of intent does not raise a person's conduct to merely a greater degree of negligence as, for instance, gross negligence. . . .
 "Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as an act which cannot exist without a purpose or design, a conscious or intentional act. 'Simple negligence is the inadvertent omission of duty; and wanton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted.' McNeil v. Munson S.S. Lines, 184 Ala. 420, 423, 63 So. 992 (1913)."
(Emphasis in McNeil.) See also Central Alabama Elec. Co-op. v.Tapley, 546 So.2d 371 (Ala. 1989).
After a thorough review of the record, we hold that the trial court erred in denying Coca-Cola's motion for J.N.O.V. on Stripling's claim of wantonness. Stripling failed to offer clear and convincing evidence that Coca-Cola acted with reckless or conscious disregard of the rights and safety of persons like Stripling.
In his brief, Stripling argues that the issue of wantonness was properly presented to the jury:
 "In the instant case, the jury listened to testimony for more than three days (April 13-17, 1992). It is critical to note that all of the witnesses who testified about Coca-Cola's bottling operation were either employees or officers of Coca-Cola, and thus, if 'biased,' were biased in favor of their own company. Though it not apparent from the record on appeal, one could see the jurors' reactions to the testimony of Coca-Cola's employees and officers as they tried to present a picture of a 'state of the art' bottling operation which simply did not compare with the obvious dangers of the bottling operation, as viewed in a videotape which was shown to them. The jury could 'see through' Coca-Cola's protestations that they didn't 'intend' to injure anyone by their operation, or its corollary, that they were always careful to safeguard the safety of the public. However, not a single employee or officer was able to point out, for example, even a single instance of Coca-Cola's having installed any protective sensors or other devices in its entire bottling operation to prevent glass fragments from entering into, or remaining in, any of its bottles, except for the 'simplimatic bottle rinse' machine, which was shown to be an ineffective method of 'cleaning' a narrow-mouth, inverted bottle.
 "Stripling submits that the evidence of Coca-Cola's disregard for the health and safety of its customers was substantial, and that this court should not try to substitute its judgment for that of the jury insofar as the imposition of punitive damages in a general verdict [is] concerned, especially here, where the need to 'warn' bottlers similarly situated, that their 'old' bottling methods need to be updated to the 1990's."
(Appellee's brief at 22-23.)
While Stripling places great emphasis on the fact that the jury sat through more than three days of testimony and on his argument that it could "see through" the evidence presented in favor of Coca-Cola, this alone is insufficient to support Stripling's claim of wantonness on the part of Coca-Cola.
Employees of Coca-Cola testified that Coca-Cola's bottling and distribution process were "state of the art" in the bottling industry. Stripling presented no evidence to dispute this testimony. Furthermore, none of these employees testified as to any *Page 886 
knowledge of any procedure used by Coca-Cola in the bottling process that was likely to cause injury. Rather, they testified to the various safety precautions taken by Coca-Cola throughout the bottling process. For example, there was testimony that bottles were randomly tested upon arrival from Anchor Glass and that certain quality control procedures, such as pressure testing, were randomly conducted during the bottling process. The bottling line had nine rinse jets that rinsed out the bottles before any product was placed in them. Contrary to Stripling's argument in his brief that this rinsing system was an "ineffective" method of cleaning the bottles, there was undisputed testimony that these jets were adequate for this purpose and were of a type used extensively in the bottling industry. There was no testimony, expert or otherwise, that Coca-Cola's bottling process was carried on with a reckless or conscious disregard of the rights or safety of others.
An employee of Coca-Cola testified that the Birmingham, Alabama, bottling facility produces approximately 17 million bottles of Coca-Cola products a year. Testimony also indicated that the standard in the industry is one bottle failure on the line per 10,000 bottles. When a bottle does break on the line, Coca-Cola has a procedure whereby the line is stopped and three bottles ahead of the breakage and six bottles behind the breakage are removed from the line and disposed of.
As for the "protective sensors" referred to by Stripling in his brief, he offered no evidence that such sensors were necessary or readily available for use in this particular high-speed bottling process. In addition, Stripling offered no evidence that Coca-Cola had any knowledge of glass getting into bottles that were reaching consumers and he offered no evidence that other consumers had ingested glass from bottles filled at Coca-Cola's plant. Finally, Stripling offered no evidence by expert or by literature, or otherwise, that any method utilized in the bottling process, or the absence of any particular method, was inappropriate or was known to create a hazard to consumers.
While there was evidence of injury to Stripling, the jury initially returned a verdict of $0 compensatory damages, and it changed its verdict to $1 only after the trial judge told the jurors they would have to find at least nominal damages in order to award punitive damages.[4] The fact that Stripling was injured does not establish that Coca-Cola was guilty of wanton conduct.
Because the plaintiff Stripling failed to present clear and convincing evidence that Coca-Cola was guilty of wantonness, the trial erred in denying Coca-Cola's motion for J.N.O.V. on the wantonness claim. Accordingly, as to that claim, the judgment is due to be reversed and the cause remanded for an order or proceedings consistent with this opinion.
II. Stripling's Motion for a New Trial as to Claims Against Anchor Glass
We now address the plaintiff Stripling's cross appeal from the denial of his motion for a new trial against Anchor Glass.
Stripling first argues that the granting of a new trial to the defendant Coca-Cola requires that Stripling be granted a new trial against Anchor Glass. That argument is not supported by the law. Rule 59(a), Ala.R.Civ.P., states that "[a] new trial may be granted to all or any of the parties." Furthermore, in Trimble v. Bramco Products, Inc.,351 So.2d 1357, 1359 (Ala. 1977), this Court stated the general rule: "Under Alabama practice, it has long been permissible in proper cases to grant a new trial as to one or more defendants and deny a new trial motion as to the others." As the Trimble Court further stated:
 "It would be manifestly unfair to require [the defendant in whose favor the jury had found] to defend the suit *Page 887 
against it again. The plaintiff has had one trial against it which went to the jury. The jury returned a verdict in (the defendant's] favor. The trial court has twice denied the plaintiff's motion for a new trial as to [the defendant]. Rule 59(a) does not require a reversal of the trial court."
351 So.2d at 1360.
This case was tried to a jury, which found that Anchor was not liable under any theory advanced against it by the plaintiff. Stripling offered no proof concerning the source of the glass fragments that were found in the bottle in question. Conversely, Anchor offered testimony that the glass fragments were probably not from glass being manufactured by Anchor at the time the bottle was made. Additionally, the parties stipulated that at the time of the incident the bottle was completely intact, with no cracks, chips, or other damage. The jury could logically have inferred that any chips of glass found in the bottle had no connection with Anchor, and the jury evidently did just that. After a jury verdict, when the trial court denies a motion for a new trial, this Court, upon appellate review, does not, and should not, disturb the verdict "unless it is plainly erroneous or manifestly unjust."Williamson v. United Farm Agency, Inc., 401 So.2d 759, 763
(Ala. 1981). We cannot find this verdict "plainly erroneous or manifestly unjust."
Stripling next argues that he is entitled to a new trial against Anchor Glass because, he says, the trial court erred by excluding Stripling's rebuttal expert on the basis that Stripling had not disclosed the existence of the expert.
On August 28, 1991, after a hearing on the employment of experts to examine the bottle in question, the trial court entered a scheduling order, which stated in part:
"(1) That, not later than October 1, 1991:
 "A. Any scientific testing of the bottle which is the basis of this suit will be requested by defendant, Anchor, if desired.
". . . .
 "(5) That, by January 15, 1992, plaintiff shall disclose to defendants any and all expert witnesses to be used at trial."
Anchor elected to have an employee, Keith Painter, examine the bottle and the glass fragments inside the bottle. More specifically, Mr. Painter took two fragments found inside the bottle for further testing. On February 6, 1992, Anchor produced a "Product Liability Examination" report, which contained an analysis of the density of the glass fragments. This report was received by Stripling on February 20, 1992.
On April 2 or 3, 1992, Stripling received a "Supplemental Report" from Anchor Glass. This report was dated March 25, 1992, and it compared the differences in the density of the glass fragments and that of the bottle and concluded that "[the] large difference in values reduces greatly any consideration on our part the fragments in question are of Anchor Glass Container origin."
On April 13, 1992, immediately before the trial, Stripling, in effect, announced that he had an expert witness who would testify in opposition to Mr. Painter's supplemental report and that that witness would be designated a rebuttal witness. Stripling had, before that time, consistently stated that he would use no expert witness at trial. The trial court disallowed Stripling's use of the expert witness, stating that, whereas the testimony of a rebuttal witness is in fact properly allowed in some cases, "when you are talking about an expert who will give a history and nature of this case, . . . it's not fair to do so." We agree.
It has long been a rule in Alabama litigation practice that a party's counsel can rely on the answers to interrogatories of an adverse party to determine the identity of any expert witness expected to be called, as well as "the subject matter on which the expert is expected to testify, and . . . the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Rule 26(b)(4)(A), Ala.R.Civ.P. When interrogatories are used to discover information about experts who will testify at *Page 888 
trial, if the identity of the expert and information about the substance of the expert's testimony are not known when the interrogatories are answered, the answering party is under a duty to supplement his response to the questions. Rule 26(e)(1)(B), Ala.R.Civ.P.
In addition, in this case, as in many others, the parties were subject to a "scheduling order"; the scheduling order in this case stated the following requirement, which was agreed to by counsel for Stripling at a scheduling conference: "(5) That by January 15, 1992, plaintiff shall disclose to defendants any and all expert witnesses to be used at trial."
In Electrolux Motor AB v. Chancellor, 486 So.2d 414 (Ala. 1986), also a products liability case, but involving a chain saw, the defendant, Electrolux, failed to furnish the information required by the trial court's pretrial order. In its answer to interrogatories from the plaintiff, Electrolux stated that it would have a manufacturer's representative at trial who "may be called to give expert opinions about the state of the art at the time this chain saw was manufactured. If any additional experts are going to be used we will supplement the record." 486 So.2d at 415.
In this case, at the time of Stripling's deposition, his counsel stated, "If we had an expert, we would tell you; but we do not anticipate at this time bringing in any experts." Counsel for Stripling also stated: "Of course, as soon as we determine an expert, we are required by your interrogatories to let you know."
In Electrolux, at trial, when Electrolux attempted to elicit expert testimony from the manufacturer's representative, whose name had never been furnished, as the answer to the interrogatory had suggested it would be, the court sustained the plaintiff's objection and refused to the let the representative testify as an expert. 486 So.2d at 416. Additionally, the court did not allow Electrolux to take the testimony of its outside expert, after the plaintiff advised the court that he had not received a witness list.486 So.2d at 415.
On appeal, Electrolux contended that it had been "denied due process by the trial court's refusal to allow it to present its own expert to rebut the testimony of Chancellor's expert as to the defectiveness of the chain saw." 486 So.2d at 416. (Emphasis added.) This Court did not agree.
Citing Rule 16, Ala.R.Civ.P., for the proposition that the parties are bound by the pretrial order, the Court held that the trial court had not abused its discretion in disallowing the testimony of the two expert witnesses. Id. Also, citing Rule 26(e)(1)(B), Ala.R.Civ.P., the Court noted that Electrolux had a duty to supplement its response to the plaintiff's interrogatories with the names of each expert it expected to use, as well as the name of its own representative from whom it expected to elicit expert testimony. The Alabama Rules of Civil Procedure "placed upon Electrolux the burden of supplementing its answer when it decided who it would use as an expert witness at trial, rather than requiring that [the plaintiff] again request the name of the expert witness from Electrolux." Id. at 417. Thus, this Court held that the trial court did not deprive Electrolux of "that fundamental fairness to which it was entitled." Id. at 418.
Stripling argues that if a witness is to be used as a rebuttal witness, the witness is somehow exempt from the requirements of Rule 26(b)(4)(A) regarding expert witnesses. However, in Super Valu Stores, Inc. v. Peterson, 506 So.2d 317
(Ala. 1987), in a similar procedural context, this Court addressed that question. Super Valu, the appellant, made in its brief an argument very similar to that made by Stripling in this case. Super Valu argued:
 "[T]his action by the trial court was an abuse of discretion, because Super Valu was prevented from utilizing an available and necessary rebuttal witness, although no prejudice to [the opposing side] was shown from allowing [Super Valu's expert witness] to testify."
506 So.2d at 338. (Emphasis added.)
The Court rejected this assertion, citing Rule 16, Ala.R.Civ.P., and reiterating the virtue of the pretrial order in controlling *Page 889 
the course of the action. The Court ruled that the trial court's refusal to allow the expert testimony because of a party's failure to comply with the pretrial order "is clearly a matter of discretion, not subject to reversal." Id.
We hold that the trial court did not abuse its discretion in precluding Stripling's expert witness from testifying because that expert's identity and the substance of his expected testimony had not been revealed before trial, as required by the pretrial order and by Rule 26(b)(4)(A), Ala.R.Civ.P.
Based on the foregoing, as to this issue the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and ADAMS, HOUSTON and STEAGALL, JJ., concur.
[1] The bottle had been manufactured by Anchor Glass at its Henryetta, Oklahoma, plant and was then sold to and filled by Coca-Cola in Birmingham, Alabama. After it was filled, the bottle was shipped to Coca-Cola's distribution center in Jasper, Alabama, from which it was delivered to Stripling's place of employment, where he purchased it.
[2] Because this cause of action accrued in July 1989, after the effective date of § 6-11-20, Ala. Code 1975, and because the plaintiff sought punitive damages for wantonness, the provisions of § 6-11-20 apply. See, Berry v. Fife,590 So.2d 884 (Ala. 1991). Section 6-11-20(b)(3) defines "wantonness" as follows:
"(3) WANTONNESS. Conduct which is carried on with a reckless or conscious disregard of the rights or safety of others."
In addition, wantonness must be proved by "clear and convincing evidence." Section 6-11-20(b)(4) defines "clear and convincing evidence" as follows:
"(4) CLEAR AND CONVINCING EVIDENCE. Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt."
[3] Obviously, under the "clear and convincing evidence" standard a party may present insufficient proof to submit the case to the jury (and thereby fail to defeat the J.N.O.V. motion), even though there has not been "a complete absence of proof."
[4] At the time of this trial, this Court had not decided ShoalsFord, Inc. v. McKinney, 605 So.2d 1197 (Ala. 1992).