The Alabama Department of Revenue (the Department) entered a "tentative Assessment of Value of Utility Property" against Delta Air Lines, Inc. (Delta) for the 1987 tax year. Delta challenged the assessment and requested a formal contested hearing on the basis that Delta's operations within the state of Alabama were exempt from taxation pursuant to § 40-9-1(24), Code 1975. Following a hearing the administrative law judge determined that the tentative assessment was correct and ordered that it should be made final. Delta appealed the order to the Circuit Court of Montgomery County. The circuit court reversed the administrative law judge's decision and invalidated the assessment. The Department appeals.
The primary issue on appeal is whether Delta qualifies for an exemption under § 40-9-1(24), which exempts a "certified or licensed air carrier with a hub operation within this state" from taxation. Section 40-9-1(24) provides the following:
 "The following property and persons shall be exempt from ad valorem taxation and none other:
". . . .
 "(24) All aircraft, replacement parts, components, systems, supplies and sundries affixed or used on said aircraft, and ground support equipment and vehicles used by or for the aircraft, when used by a certificated or licensed air carrier with a hub operation within this state, for use in conducting intrastate, interstate or foreign commerce for transporting people or property by air. For the purpose of this subdivision, the words 'hub operation within this state' shall be construed to have all of the following criteria:
 "a. There originates from the location 15 or more flight departures and five or more different first-stop destinations five days per week for six or more months during the calendar year; and
 "b. Passengers and/or property are regularly exchanged at the location between flights of the same or a different certificated or licensed air carrier."
Delta is a licensed air carrier within the state. It is conceded that passengers and property are regularly exchanged at Delta's Birmingham operation between other Delta flights and different licensed air carriers' flights. It is conceded that since 1987 Delta has had fifteen or more daily departures from Birmingham at least five days per week for six or more months during the calendar year. The Department *Page 1354 
admitted that if it were determined that there originated from Birmingham fifteen or more Delta flight departures five days per week for at least six months, then Delta would similarly satisfy the requirement of having at least five different "first-stop destinations."
The dispositive issue in this case involves the interpretation of the phrase, "there originates from the location 15 or more flight departures."
The Department contends that a "flight departure" "originates" in Birmingham when the "first leg of a flight" begins there. It asserts that the origination of a flight departure is determined by the assignment of a new flight number. Utilizing this interpretation, the Department argues that Delta does not meet the statutory requirement because, out of the fifteen daily departures, only nine are assigned new flight numbers.
On the other hand, Delta contends that the statute is clear and unambiguous. It asserts that the term "flight departure" has only one meaning in the commercial airline industry and that is "a segment of a flight departing a particular city and going down to the next scheduled destination and by nature it originates at one point and terminates at its next scheduled down line point." Delta contends that the Birmingham operation falls within the statutory exemption because in 1987 it had fifteen flights departing on a daily basis. Delta submits that the Department's interpretation is strained, unreasonable, unworkable, and inconsistent with the legislative intent of the statute.
We have searched for judicial assistance in our quest to interpret the contentious phrase. Our search, however, has been to no avail. We therefore must construe the statute, keeping in mind the fundamental rule that we have a duty to ascertain and effectuate the legislative intent. Ex parte Holladay,466 So.2d 956 (Ala. 1985).
When an exemption statute is uncertain in language, we must construe it in favor of the taxing authority. "However, that principle does not require a strained interpretation in favor of the taxing authority." State v. Sprinkle Net Shop, Inc.,351 So.2d 608 (Ala.Civ.App. 1977). When a statute is susceptible to two interpretations, one of which is fair and workable and the other unjust and unworkable, we will assume that the legislature intended the statute to be workable and fair. Statev. Calumet Hecla Consol. Copper Co., 259 Ala. 225,66 So.2d 726 (1953).
The purpose of the statute is to encourage an increase in the commercial activity within the airline industry of this state. The Department's interpretation frustrates that purpose because flight number changes are not reasonably or workably related to any particular level of commercial activity.
For example, Delta's San Francisco operation has twenty-one daily departures with twenty flight number changes. Delta's Chicago operation has thirty-one daily departures with thirty flight number changes. American Airlines' Nashville operation has 117 daily departures with seven flight number changes, and American Airlines' Raleigh-Durham operation has 111 daily departures with eight flight number changes. If these four operations were moved to Alabama only Delta would qualify for the exemption under the statute. This is an illogical and mechanistic result which defeats the purpose of the statute.
Furthermore, we find that the Department's construction has no rational basis. The Department admitted that its interpretation was developed without an understanding of the common usage of the disputed words as used in the industry and without an understanding of the practice within the industry pertaining to the assignment of flight numbers.
We find Delta's interpretation, which was adopted by the circuit court, to be the reasonable and workable construction of the statute. It is our opinion that the meaning of the contentious phrase in question, as applied in the commercial airline industry and with reference to the object to be accomplished by the statute, refers to the departure of an airplane departing a particular location and going to the next *Page 1355 
scheduled destination. A flight departure originates at the point from which the airplane takes off and terminates at its next scheduled destination.
The circuit court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of section12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
ROBERTSON and RUSSELL, JJ., concur.
INGRAM, P.J., recuses himself.