The plaintiffs, Century 21-Reeves Realty, Inc., and its president, Iris Reeves ("Century 21"), appeal from separate summary judgments for the defendants, General Motors Corporation ("GM") and McConnell Cadillac, Inc. ("McConnell"), in this action seeking damages for breach of warranty, fraud, and negligence. We affirm in part, reverse in part, and remand.
The following material facts in this case are undisputed: Century 21 leased a Cadillac DeVille automobile from General Motors Acceptance Corporation ("GMAC") in 1985. GM had built the automobile and sold it to GMAC. The automobile was equipped with an "HT-4100" engine. GM had had a problem with this kind of engine in that it would leak coolant slowly around a gasket into the engine's crank-case, thereby reducing the lubricating capabilities of the engine's oil and causing damage. However, GM automobiles equipped with this kind of engine that were built midway through 1985, such as the one purchased by Century 21, were serviced at the factory before shipment, to correct this problem. GM adopted a program whereby notices were to be mailed to owners and dealers detailing the potential problem with the HT-4100 engines. Owners whose automobiles had not been serviced at the factory were to be mailed notices stating that dealer services were available to correct the problem and informing them that GM was providing *Page 1275 
an extended limited warranty on the engine. That warranty covered, for 48 months or 50,000 miles, whichever occurred first from the date the automobile was placed in service, repairs or adjustments to the covered components of the engine that were needed because of defects in material or workmanship. It also provided:
 "General Motors does not authorize any person to create for it any other obligation or liability in connection with these cars. Any implied warranty of merchantability or fitness for a particular purpose applicable to the engine components covered by this limited warranty is limited in duration to the duration of the written warranty."
(Emphasis in the warranty document.) Owners whose automobiles had been serviced at the factory were to be mailed similar notices and were also to receive the extended engine warranty.
When Century 21 leased the automobile from GMAC, it was covered by the extended limited warranty on the engine as well as by a 12-month, 12,000 mile, general GM limited warranty. Century 21 also purchased a five-year, unlimited mileage, extended service contract covering the automobile. Although not a warranty, that contract covered the cost of certain repairs that might be made to the automobile. Upon expiration of its lease in 1990, Century 21 purchased the automobile from GMAC. Neither GM nor McConnell was involved with the negotiations leading up to Century 21's purchase of the automobile. Shortly after Century 21 had purchased the automobile, the engine overheated and was damaged as a result. Although the GM limited warranties, as well as the extended service contract, had expired by the time the automobile's engine failed, GM and McConnell offered to replace the engine at no cost to Century 21. Century 21 rejected this offer.
Century 21 sued, claiming against GM breach of warranty and fraud, alleging that GM had breached both express and implied warranties covering the automobile and that GM had suppressed material information concerning the problem that it had had with the HT-4100 engine. Against McConnell, Century 21 claimed fraud and negligence, alleging that McConnell had also suppressed material information concerning the automobile's engine and that McConnell had negligently failed to repair the automobile.
Our standard of review in this case is well settled. The summary judgments were proper if there was no genuine issue of material fact and each defendant was entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. The burden was on the defendants to make a prima facie showing that no genuine issue of material fact existed and that they were entitled to a judgment as a matter of law. If they made that showing, then the burden shifted to Century 21 to rebut that showing by presenting evidence creating a genuine issue of material fact. In determining whether there was a genuine issue of material fact, we must view the evidence in the light most favorable to Century 21 and must resolve all reasonable doubts against the defendants. Knight v. Alabama Power Co., 580 So.2d 576
(Ala. 1991).
After carefully reviewing the briefs of the parties and the applicable portions of the record, we conclude that the summary judgment for GM was proper as to Century 21's breach of warranty claims. The undisputed evidence shows that the express GM limited warranties covering the automobile had expired by the time the engine failed. Furthermore, pursuant to Ala. Code 1975, § 7-2-316 ("Exclusion or modification of warranties"), GM had expressly limited the duration of any implied warranties of merchantability (§ 7-2-314) and fitness for a particular purpose (§ 7-2-315) to the duration of the extended limited warranty on the engine.
We also conclude that the summary judgment for GM was proper as to Century 21's fraud claim. The undisputed evidence shows that Century 21 purchased the automobile from GMAC, not from GM. GM was not involved with the negotiations leading up to Century 21's purchase of the automobile from GMAC. GM, which had no confidential relationship with Century 21 (in fact, GM had no contacts with Century 21 at all), had serviced Century 21's automobile at the factory *Page 1276 
to correct the problem with the engine. Although GM may have misjudged the effectiveness of its efforts to rectify the problem with the engine's gasket, we can find no basis under the circumstances of this case upon which to impose a duty on GM's part to disclose information concerning the automobile directly to Century 21. See Cobb v. Southeast ToyotaDistributors, Inc., 569 So.2d 395 (Ala. 1990).[1]
Century 21's fraud claim against McConnell was based on allegations that McConnell had failed to inform Century 21 of the problem that GM had had with the HT-4100 engine. The evidence shows that Iris Reeves's husband, A.C. Reeves, took the automobile to McConnell on August 16, 1990, shortly before Century 21 purchased it from GMAC. Reeves testified that he told a McConnell service representative that the air conditioner and radio antenna were not working properly. He further testified that he told the representative that the automobile's "coolant light" had come on and that he asked that the automobile be "checked out" before Century 21 purchased it. The repair order prepared by the service representative contained no reference to a complaint concerning the "coolant light"; it did state that the "A/C light [had come] on." Mr. Reeves testified that when he picked up the automobile he was told that it was "ready." Mr. Reeves made no specific inquiries as to the mechanical work that had been performed on the automobile. The air conditioner and the radio antenna were repaired. Subsequently, the engine on the automobile overheated and was damaged as a result.
After carefully reviewing the record, we conclude that the summary judgment for McConnell was proper as to Century 21's fraud claim. The undisputed evidence shows that the engine in Century 21's automobile had been serviced by GM at the factory to correct the problem caused by the leaking gasket. McConnell, which had been notified of that fact by GM, was never informed by Century 21, before August 16, 1990, of any problem with the automobile's engine that could be associated with the engine's coolant leaking into the crankcase. McConnell adamantly disputed Mr. Reeves's testimony that he told its service representative about the "coolant light." Mr. Reeves testified that he never said anything to the representative about the "A/C light." Therefore, viewing the evidence in the light most favorably to Century 21, we must conclude for purposes of this appeal that Mr. Reeves told the service representative that the "coolant light" had come on and that the representative misstated on the repair order that the "A/C light" had come on. The obvious result of this "failure to communicate" would have been that McConnell would not check, or would not adequately check, the automobile's cooling system. However, we can see no evidentiary support for Century 21's allegations that McConnell had specific information concerning the automobile's engine that would have given rise to a duty on its part to inform Century 21 about the problem that GM had had with the HT-4100 engine.
We disagree, however, with the trial court's entry of the summary judgment as to Century 21's negligence claim against McConnell. As previously noted, the evidence, when viewed in the light most favorable to Century 21, indicates that Mr. Reeves informed McConnell, through its service representative, that the automobile's "coolant light" had come on. Although McConnell disputes Mr. Reeves's testimony, a fact question was presented as to whether McConnell's service representative exercised reasonable care under the circumstances in transcribing Mr. Reeves's complaint onto the repair order so that the engine's cooling system could be thoroughly inspected.
We note McConnell's argument that, because the engine was never "broken down" for an examination as to the exact cause of the engine's failure, the summary judgment should be affirmed on the ground that Century 21 failed to present any expert testimony as to the proximate cause of the damage (i.e., *Page 1277 
evidence showing that the engine was damaged as a result of the engine's coolant leaking around the gasket and into the crankcase). Initially, we point out that McConnell apparently presented no evidence tending to show that its alleged negligence was not the proximate cause of the engine's damage. Therefore, the burden never shifted to Century 21 to present any evidence concerning the proximate cause of the damage. In any event, the record contains the following testimony of Edwin McConnell:
 "A. . . . At which time I turned to my service manager, Bill, I said 'Bill, is that correct?' And Bill said, 'That's correct, approximately; Cadillac has agreed to pay for half of the repairs on Mrs. Reeves's engine.' And I immediately said to Mrs. Reeves at that time, 'Well, Mrs. Reeves, don't worry about it, McConnell Cadillac will pay for the rest of the engine repair, whatever that happens to be.'
 "Q. Let me stop you there. Was the fifteen hundred dollars — was that going to be her part or was that the total amount that would be split between GM and —
 "A. You have to keep in mind at this time we had not gone into Mrs. Reeves's engine.
"Q. Okay.
 "A. We strictly knew that we had a water and oil condition. So that maximum amount of the repair to the engine alone, if you replace the engine and put a new engine in that has a three-year, fifty-thousand-mile warranty, is three thousand dollars."
In addition, Harvey Totsch, an employee of McConnell, testified as follows:
 "Q. Anything else you recall about that conversation [with Iris Reeves]?
 "A. Well, other than we gave her an estimated price of what the repairs could amount to, approximately $3,000.
 "Q. Okay. Do you remember if that was to repair the engine or replace the engine?
 "A. Well, it could run either way. Sometimes when you get involved in the repair of the engine it could run more than the replacement, you know, cost. Sometimes it's easier to replace — cheaper to replace the engine.
 "But we wouldn't know anything on this particular repair unless we tore the engine down and inspected it to see how much internal damage was done —
"Q. Okay.
"A. — from the coolant getting into the oil."
This testimony, which was properly before the trial court when it considered the summary judgment motion, was sufficient to present a fact question as to the proximate cause of the damage to the engine.
For the foregoing reasons, the summary judgment for GM was proper and, therefore, it is due to be affirmed. The summary judgment for McConnell was proper as to the fraud claim and, therefore, it is due to be affirmed as to that claim; however, the summary judgment for McConnell was improper as to the negligence claim and it is due to be reversed as to that claim.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX and SHORES, JJ., concur.
KENNEDY, J., concurs in the result.
[1] The record shows that GM adopted a plan to notify owners of record of automobiles equipped with the HT-4100 engine of the problem that it had had with the gaskets. The record is unclear; however, as to whether GMAC or Century 21 actually received specific notice of the engine's problematic history.