655 So.2d 909 (1994)
Richard E. HINES and Linda D. Hines,
v.
RIVERSIDE CHEVROLET-OLDS, INC., et al.
1921764.
Supreme Court of Alabama.
September 2, 1994.
On Application for Rehearing January 13, 1995.
*914 Britt S. Booth of Booth Law Offices, P.A., Montgomery, for appellants.
Richard T. Dorman and Patricia J. Ponder of McRight, Jackson, Dorman, Myrick & Moore, Mobile, for appellees.
ALMON, Justice.
The plaintiffs Richard E. Hines and Linda D. Hines appeal from a summary judgment in favor of General Motors Corporation, Riverside Chevrolet-Olds, Inc. ("Riverside Chevrolet"), and Tommy Hatchett, a salesperson employed by Riverside Chevrolet. The Hineses brought this action for compensatory and punitive damages, alleging claims of intentional suppression and fraudulent misrepresentation in connection with their purchase of a 1991 Oldsmobile Calais automobile from Riverside Chevrolet. The issues are (1) Whether the defendants owed a duty to the Hineses to disclose that the left rear quarter panel of the Oldsmobile Calais had been repainted and intentionally breached that duty; (2) Whether the Oldsmobile Calais, whose left rear quarter panel had been repainted by the manufacturer, was a "new" car as a matter of law, and (3) Whether § 6-11-20, Ala.Code 1975, required the Hineses to present "clear and convincing" evidence creating a genuine issue of material fact as to their claims of intentional suppression and fraudulent misrepresentation.
In October 1991, the Hineses bought a 1991 Oldsmobile Calais from Riverside Chevrolet in Wetumpka. The Oldsmobile Calais was sold with a General Motors warranty providing repair and replacement in regard to defects in the material or workmanship of the car for a period of three years or 50,000 miles, whichever came first. In the glove compartment of the Oldsmobile Calais was an owner's manual entitled "1991 Warranty and Owner Assistance Information," which, among other things, contained the terms of the warranty. This manual contains a "pre-delivery service" clause:

*915 "Defects in or damage to the mechanical, electrical, sheet metal, paint, trim, and other components of your vehicle may occur at the factory or while it is being transported to the dealership. Normally, any defect or damage occurring during assembly is detected and corrected at the factory during the inspection process. In addition, dealerships are obligated to inspect each vehicle before delivery. They repair any uncorrected factory defects or damage and any transit damage detected before the vehicle is delivered to you.
"Any defects still present at the time the vehicle is delivered to you are covered by the warranty. If you find any such defects when you take the delivery, please advise your dealership without delay."
(Emphasis added). In his deposition, Richard Hines testified that after he bought the car, he "glanced" through the contents of this manual.
After owning the Oldsmobile Calais for several months, Richard Hines noticed a slight discrepancy in hue between the paint on the left rear quarter panel and that of the rest of the car. The paint on the left rear quarter panel was darker than the paint on the rest of the car. He had the Oldsmobile Calais examined by employees of three automobile body shops; they all told him that in their opinion the left rear quarter panel had been repainted. No one at any of these body shops, however, expressed the opinion that the Oldsmobile Calais had been damaged in a wreck or a collision.
Richard Hines confronted Terry Styron, owner of Riverside Chevrolet, about the matter. Styron denied that the Oldsmobile Calais had been damaged and repaired or that the car had been repainted while it was in the possession of Riverside Chevrolet. According to Riverside Chevrolet, after receiving the Oldsmobile Calais from General Motors, its manufacturer, employees of Riverside Chevrolet inspected the car and later "buffed out" some "beaded" or rough paint on the left rear quarter panel. Styron offered to repaint the entire car to cure the discrepancy in hue, but Richard Hines refused, stating that a repainted car is worth less than one with the original factory paint finish and that he wanted a car with the original factory paint finish. Styron offered to replace the Oldsmobile Calais with another car, but because Riverside Chevrolet could not find a replacement with the same interior color, Mr. Hines declined the offer.
The Hineses brought this action against Riverside Chevrolet and Tommy Hatchett, the Riverside Chevrolet salesperson who sold them the Oldsmobile Calais, and numerous fictitiously named defendants, alleging that the defendants had intentionally suppressed the fact that the car had been repaired and repainted and that that fact was a material one. The Hineses subsequently amended their complaint, to substitute General Motors for one of the fictitiously named defendants and to add a claim of fraudulent misrepresentation against all the defendants. With regard to the claim of fraudulent misrepresentation, the Hineses alleged that the defendants had represented the Oldsmobile Calais as a "new" car and alleged that, because the left rear panel had been repainted, that representation was false. Based on information obtained during discovery, the Hineses also alleged that the Oldsmobile Calais had been repainted before Riverside Chevrolet received the car and while it was in the possession of General Motors.
In support of their motion for a summary judgment, General Motors and Riverside Chevrolet introduced the affidavit of Troy Martin, the body shop manager of Riverside Chevrolet; the affidavit of Mike Warren, the body shop manager of the Capitol Chevrolet dealership in Montgomery; and excerpts from the depositions of Richard and Linda Hines. In his affidavit, Martin stated that when the Oldsmobile Calais was inspected after delivery, an approximately one-inch-wide rough spot in the paint on the left rear quarter panel was discovered and "buffed out." According to Martin and Warren, "buffing out" involves an "automatic" waxing and polishing of the exterior of a vehicle, which is performed as a routine part of a dealer's preparation of any vehicle for sale to the public. Martin and Warren stated that "buffing out" does not affect the "newness" of a vehicle and that neither Riverside Chevrolet nor any other automobile dealership, of *916 which they were aware, disclosed such work on a new car before selling it. Both Martin and Warren also stated that the left rear quarter panel of the Oldsmobile Calais appeared to have been repainted but that the car did not appear to have been damaged in a wreck or a collision. Both Martin and Warren expressed the opinion that the Oldsmobile Calais had been repainted at the factory to correct a scratch or other minor imperfection in the paint.
In opposition to the motion for a summary judgment, the Hineses introduced the delivery receipt, the receipt for the "buffing out" performed on the Oldsmobile Calais, excerpts from Richard Hines's deposition, the affidavit of an expert named Steve Johnsen, answers to interrogatories, and a General Motors guideline for repair and disclosure regarding vehicles damaged while still in the possession of the assembly plant.
The delivery receipt from Commercial Carriers, Inc., which delivered the Oldsmobile Calais to Riverside Chevrolet, read "Left Rear Quarter Panel Beaded Paint." The invoice for the "buffing out" performed by employees of Riverside Chevrolet read "Paint on left quarter panel rough. Finish, sand, & buff quarter."
In his affidavit, Steve Johnsen stated that if a car on an assembly line has a defect or blemish in its paint, the manufacturer does not refinish it on the assembly line; rather, he said, the car is refinished off the assembly line by a method essentially similar to that used by a body shop, and he said that method creates an inferior paint finish:
"The factory uses a 750-gallon paint drum, and it is constantly agitated by mixing pistons. The paint is sprayed in a 14-foot-wide swath by a computer-instructed pressure cup in a temperature- and humidity-controlled room. By contrast, the hand painter uses a quart re-fill jar and sprays an approximately 14-inch area. Also, the pressure used in the paint guns at the factory is much higher. With the higher pressure, the metallic particles hit the surface and bounce back; the more reflective particles at the surface cause the color to appear lighter. At a lower pressure the paint is darker because the metallic flakes sink to the bottom of the paint surface.
"In any case, one cannot use the same paint which the factory uses in its system. The factory process uses a water-borne paint which is an acrylic enamel-latex base. Due to the vast quantities of painting at the factory, the Environmental Protection Agency has directed that they use this type in contrast to the compounds used for smaller jobs.
"In the factory system an electric charge is put on the metal to be coated and the opposite electric charge is put into the air surrounding it. As the paint sprays through the air it picks up the charge and ionically bonds to the metal surface with the opposite charge.
"A repaint layer is not as durable as the original paint surface. The second layer increases the total thickness of the paint layer. As the brittle paint surface expands and contracts in response to temperature changes, the thicker layers are more affected and therefore begin to flake and crack much sooner."
The General Motors guideline contains rules governing the repair of vehicles damaged while still in the possession of the assembly plant and governing the disclosure of such repairs to prospective customers. The guideline establishes three categories of vehicle damage incurred in the production process. The first category, entitled "Category A," applies to damage "which can be satisfactorily repaired to meet applicable government regulations; [General Motors'] customer's expectations; and General Motors quality standards." If the damage to the vehicle is within a prescribed $500 "current repair limit," then it falls within Category A, and General Motors will repair the damage, but will not disclose it. The guideline states that "All `paint only' (Paint, labor and materials) repairs, including fluid damage and minor scratches" are not included in the calculation of the $500 current repair limit.
"Category B" applies generally to damage that is repairable but whose cost of repair exceeds the $500 current repair limit. Damage falling within Category B requires disclosure. As with Category A, the current repair *917 limit is calculated without regard to the cost of labor and material necessary to repair paint damage. "Category C" applies to damage so extensive that it affects the marketability, safety, durability, or reliability of the automobile.[1]
In his deposition, Richard Hines stated that if he had known that the Oldsmobile Calais had been repainted he would not have bought it. Further, he stated that, based on his experience in buying and selling cars, he understood that a repainted car has a significantly lower value than one that has not been repainted, regardless of who repainted it.
In its judgment, the circuit court held that, as a matter of law, the Oldsmobile Calais was a "new" car and that, therefore, the defendants had not misrepresented that it was a "new" automobile. The circuit court also held that the defendants had not suppressed or concealed any material fact, because the fact allegedly suppressed, i.e., the repainting of the car, was not a material fact. Last, the circuit court held that the evidence was insufficient to support a "claim for punitive damages" because, it held, the plaintiffs had not presented "clear and convincing" evidence that the defendants had had an intent to deceive or had committed gross, oppressive, or malicious conduct.
A summary judgment, under Rule 56, Ala.R.Civ.P., is proper only when the trial court determines that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Dodd v. Nelda Stephenson Chevrolet, Inc., 626 So.2d 1288 (Ala.1993). On a motion for a summary judgment, when the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Cobb v. Southeast Toyota Distributors, Inc., 569 So.2d 395 (Ala.1990); Bean v. Craig, 557 So.2d 1249, 1252 (Ala.1990); Rule 56(e), Ala.R.Civ.P.; § 12-21-12, Ala.Code 1975. The evidence is viewed most favorably to the nonmovant, and all reasonable doubts concerning the existence of a genuine issue of a material fact are resolved against the movant. Specialty Container Mfg., Inc. v. Rusken Packaging, Inc., 572 So.2d 403, 404 (Ala. 1990).
The first issue is whether there was substantial evidence that the defendants owed a duty to the Hineses to disclose that the left rear quarter panel had been repainted by the manufacturer and intentionally breached that duty.[2]
The Hineses argue that the repainting of the left rear quarter panel of the Oldsmobile Calais was a "condition that lowers the value of the car" and that, therefore, it was a material fact, which, they say, the defendants had an obligation to disclose. Citing Baker v. Bennett, 603 So.2d 928 (Ala.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1260, 122 L.Ed.2d 658 (1993), and Interstate Truck Leasing, Inc. v. Bender, 608 So.2d 716 (Ala. 1992), the Hineses contend that General Motors and Riverside Chevrolet had knowledge of this fact and that because they would not have bought the car if they had also known this fact, General Motors and Riverside Chevrolet had a duty to disclose it.
With regard to Riverside Chevrolet and Tommy Hatchett, the defendants argue that the Hineses did not present substantial evidence *918 that Riverside Chevrolet or Hatchett knew that the paint finish on the quarter panel of the Oldsmobile Calais had been damaged and repainted and therefore owed a duty to disclose this fact; Riverside Chevrolet and Tommy Hatchett say they knew only of the "beaded" paint that was later "buffed out." With regard to General Motors, the defendants contend that it had no contact with the Hineses during the sale of the Oldsmobile Calais and the negotiations leading up to the sale and that, therefore, it had no relationship with the Hineses on which a duty to disclose may be established. The defendants further contend that the "pre-delivery service" clause of the warranty constituted a sufficient disclosure that the car might have defects in the paint finish. Last, the defendants contend that even if the Court holds that the defendants breached a duty to disclose the fact that the paint finish of the Oldsmobile Calais had been damaged and that General Motors had repainted part of it, the Hineses failed to prove that they breached this duty with any present intent to deceive.
To establish a prima facie case of suppression of a material fact under § 6-5-102, Ala.Code 1975, a plaintiff must show (1) that the defendant had a duty to disclose a material fact, (2) that the defendant concealed or failed to disclose this material fact, (3) that the defendant's concealment or failure to disclose this material fact induced the plaintiff to act or to refrain from acting, and (4) that the plaintiff suffered actual damage as a proximate result. Dodd v. Nelda Stephenson Chevrolet, Inc., 626 So.2d 1288, 1293 (Ala.1993); Soniat v. Johnson-Rast & Hays, 626 So.2d 1256, 1258-59 (Ala.1993); Baker v. Bennett, 603 So.2d 928, 934-35 (Ala.1992). One can be liable for suppression only if one has knowledge of the material fact allegedly suppressed. Dodd, 626 So.2d at 1292; McGarry v. Flournoy, 624 So.2d 1359, 1362 (Ala.1993); Cornelius v. Austin, 542 So.2d 1220, 1224 (Ala.1989).
Mere silence is not fraudulent in the absence of a duty to disclose. A duty to disclose may arise from a confidential relationship, from a request for information, or from the particular circumstances of the case. Dodd, 626 So.2d at 1293; Hardy v. Blue Cross & Blue Shield of Alabama, 585 So.2d 29, 32 (Ala.1991); King v. National Foundation Life Ins. Co., 541 So.2d 502 (Ala. 1989). Under § 6-5-102, whether a duty to disclose arises in the particular circumstances of a case depends on the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances. Interstate Truck Leasing v. Bender, 608 So.2d 716, 719 (Ala.1992); Baker, 603 So.2d at 935; Crowder v. Memory Hill Gardens, Inc., 516 So.2d 602 (Ala.1987); Hopkins v. Lawyers Title Ins. Corp., 514 So.2d 786, 790 (Ala.1986); Berkel & Co. Contractors v. Providence Hosp., 454 So.2d 496 (Ala.1984); Jim Short Ford Sales, Inc. v. Washington, 384 So.2d 83, 86-87 (Ala.1980); Hall Motor Co. v. Furman, 285 Ala. 499, 234 So.2d 37 (1970). When the defendant had superior knowledge of the fact not disclosed and the plaintiff was induced to take action that the plaintiff might not have otherwise taken if he or she had also known this fact, a reasonable person is more likely to find a duty to disclose. Baker, 603 So.2d at 935; Interstate Truck Leasing, 608 So.2d at 720; see also First Alabama Bank of Montgomery, N.A. v. First State Ins. Co., 899 F.2d 1045 (11th Cir.1990) (applying Alabama law). See generally W. Page Keeton et al. Prosser and Keeton on the Law of Torts § 106 (4th ed. 1971). If a plaintiff offers evidence of particular circumstances creating an inference that the defendant should have disclosed certain material facts, then whether the defendant had a duty to communicate those facts is for the jury to determine. Interstate Truck Leasing, 608 So.2d at 720; Lawyers Title Ins. Corp. v. Vella, 570 So.2d 578, 585 (Ala.1990); Hopkins, 514 So.2d at 790; Lowder Realty, Inc. v. Odom, 495 So.2d 23 (Ala.1986); see Jim Walter Homes, Inc. v. Waldrop, 448 So.2d 301 (Ala.1983); Jim Short Ford Sales, Inc., 384 So.2d at 86-87.
With regard to Riverside Chevrolet and Tommy Hatchett, we hold that the circuit court properly entered the summary judgment as to the claim of intentional suppression, because the Hineses presented no substantial evidence that either Riverside Chevrolet or its agent Tommy Hatchett knew the *919 car had been repainted. Dodd v. Nelda Stephenson Chevrolet, Inc., 626 So.2d 1288, 1292-93 (Ala.1993); McGarry v. Flournoy, 624 So.2d 1359, 1362 (Ala.1993). The evidence in the record shows at most that Riverside Chevrolet and Tommy Hatchett knew only of the "beaded paint" on the left rear quarter panel that was later "buffed out."[3]
With regard to General Motors, we address whether there was substantial evidence from which a factfinder could find (a) that General Motors owed the Hineses a duty to disclose, (b) that it breached this duty, and (c) that it did so with an intent to deceive.
In determining whether there was evidence that General Motors owed to the Hineses a duty to disclose material facts concerning the Oldsmobile Calais, we consider first whether General Motors, an automobile manufacturer, and the Hineses, new car purchasers, had a sufficient relationship on which to base a duty to disclose on the part of General Motors. Citing Century 21-Reeves Realty, Inc. v. McConnell Cadillac, Inc., 626 So.2d 1273 (Ala.1993), and Cobb v. Southeast Toyota Distributors, Inc., 569 So.2d 395 (Ala.1990), the defendants argue that General Motors had no contact with the Hineses during the sale of the Oldsmobile Calais and no contact with them during the negotiations leading to the sale and that, therefore, no relationship existed on which to establish a duty to disclose.
In Century 21, Century 21-Reeves Realty brought an action against General Motors and others, alleging breach of warranty, fraud, and negligence, in connection with the leasing of a Cadillac DeVille. General Motors built the Cadillac DeVille and sold it to GMAC; GMAC then leased it to Century 21-Reeves Realty. In its complaint, Century 21-Reeves Realty alleged, among other things, that General Motors had suppressed a material fact concerning the type of engine installed in the car, a type that had had a long history of problems. Citing only Cobb v. Southeast Toyota Distributors, Inc., supra, the Court affirmed a summary judgment in favor of General Motors, holding that because General Motors had had no confidential relationship with Century 21-Reeves Realty and because General Motors had not been involved in the negotiations for the leasing of the Cadillac DeVille from GMAC and had had no other contacts with Century 21-Reeves Realty, no relationship existed on which to base a duty to disclose.
In Cobb v. Southeast Toyota Distributors, Inc., supra, the purchaser of a Toyota Corolla brought an action against a car dealership and the regional distributor for the dealership, alleging fraudulent misrepresentation and fraudulent concealment. The Court affirmed a summary judgment in favor of the regional distributor on both claims, reasoning simply that the record did not show that the regional distributor had been a party to or had had any knowledge of the sale of the Toyota Corolla.
The defendants argue, and the reasoning of Century 21 and Cobb suggests, that a duty to disclose does not exist without a contractual relationship or other dealings between the parties. Our case law, however, makes it very clear that in an action alleging suppression of a material fact, a duty to disclose may be owed to a person with whom one has not had a contractual relationship or other dealings. Johnny Spradlin Auto Parts, Inc. v. Cochran, 568 So.2d 738, 742-43 (Ala.1990); Lawyers Title Ins. Corp. v. Vella, 570 So.2d 578, 585 (Ala.1990); Hopkins v. Lawyers Title Ins. Corp., 514 So.2d 786 (Ala. 1986); Mid-State Homes, Inc. v. Startley, 366 So.2d 734 (Ala.Civ.App.1979); Chandler v. Hunter, 340 So.2d 818 (Ala.Civ.App.1976); cf. Sims v. Tigrett, 229 Ala. 486, 158 So. 326 (1934) (holding that plaintiffs who had purchased bonds could recover for deceit, even though defendant did not sell plaintiffs the bonds, when the plaintiffs were included in the class of persons the defendant intended to induce by means of fraudulent misrepresentations).
The extent of a legal duty not to make a false representation or to suppress a *920 material fact informs our analysis of whether two parties have a sufficient relationship on which to base a duty to disclose. In Colonial Bank v. Ridley & Schweigert, 551 So.2d 390, 396 (Ala.1989), this Court stated:
"There can be no actionable fraud without a breach of a legal duty owed by the defendant to the plaintiff. George v. Federal Bank of Jackson, 501 So.2d 432 (Ala. 1986).
"There is a duty not to make a false representation to those to whom a defendant intends, for his own purposes, to reach and influence by the representation; to those to whom he has a public duty created by statute or pursuant to a statute; and to those members of a group or class that the defendant has special reason to expect to be influenced by the representation. W. Prosser, Misrepresentation and Third Persons, 19 Vand.L.Rev. 231, 254 (1966)."[4]
It is evident from these principles and our case law that the fact that two parties have had no contractual relationship or other dealings does not preclude the finding of a legal duty not to make a material misrepresentation or to suppress a material fact. The absence of a contractual relationship or other dealings, therefore, likewise does not preclude the finding of a relationship on which to base a duty to disclose. Johnny Spradlin Auto Parts, Inc., 568 So.2d at 742-43; see, e.g., Jim Short Ford Sales, Inc., 384 So.2d at 86-87. Whether a duty to disclose exists must be determined by examining the particular facts of each case. Jim Short Ford Sales, Inc., 384 So.2d at 86-87; Berkel & Co. Contractors, 454 So.2d at 505; Hopkins, 514 So.2d at 790.
Because the Hineses were members of a group or class of persons who General Motors expected or had special reason to expect would be influenced by its decision not to disclose information about the repainting of damaged automobiles, General Motors and the Hineses had a sufficient relationship on which to base a duty to disclose. Johnny Spradlin Auto Parts, Inc., 568 So.2d at 742-43; Jim Short Ford Sales, Inc., 384 So.2d at 86-87. To the extent that Century 21 and Cobb are inconsistent with the principles discussed above and with our holding on this issue, they are overruled.
We turn our attention now to the value of the fact allegedly suppressed. Because of the peculiar limitations of the process used to repaint cars, even at the factory, we conclude that the fact that the Oldsmobile Calais was repainted to remedy a defect in the paint finish is a material fact, which significantly affects the fair market value of a car and whose importance is fairly commonly known among the public. See BMW of North America, Inc. v. Gore, as modified on denial of rehearing, 646 So.2d 619 (Ala.1993). The Hineses presented sufficient evidence from which an impartial trier of fact could infer that the process employed at the General Motors factory to repaint cars with damaged or defective paint produces a paint finish markedly inferior in quality and durability to the paint finish produced by the original manufacturing process; that a car that has been repainted at the factory to correct damage to, or a defect in, its paint finish, has a significantly lower fair market value; and that damage to a car's original factory paint finish cannot be remedied adequately because no process available to repaint a car with a damaged or defective paint finish can produce a paint finish of the same or substantially same quality or durability as that produced during the original manufacturing process.
The repainted left rear quarter panel in this case is comparable to the replaced "factory-installed V.I.N. plate" in Johnny Spradlin Auto Parts, Inc. v. Cochran, 568 So.2d 738 (Ala.1990). In that case, this Court held that for purposes of determining whether a duty to disclose existed between two parties, who had no contractual relationship or dealings with each other, the replacement of a 1983 "Vehicle Inspection Number" ("V.I.N.") plate with a 1986 V.I.N. plate was a significant fact. The Court stated:
"The significance of the suppression is illustrated by Cochran's remark that, once *921 the factory-installed public V.I.N. plate is removed, `you can never get it put back there' [and] by [the defendant's own] admission that a car with an assigned plate `would bring less money'...."
568 So.2d at 742. Like the replacement of the factory-installed V.I.N. plate, the repainting of the left rear quarter panel cannot be effectively remedied, even, it seems, by the manufacturer's own repainting process, and the repainting, like the replacement of the V.I.N. plate, lowers the fair market value of a car.
Next, we address the relative knowledge of the parties. This step is an especially important part of the analysis because it reflects key considerations underlying the § 6-5-102 exception to the general rule that one has no duty to disclose: the relative availability of information, the relative expertise of the parties, and the relative cost of acquiring such information and expertise. Although repainting is detectable or noticeable, the facts of this case and others show that repainting is not always readily apparent and that sometimes it is not discovered until long after the purchase of the vehicle. E.g., Dodd v. Nelda Stephenson Chevrolet, Inc., 626 So.2d 1288, 1289-90 (Ala. 1993) (purchaser noticed streaks or sand marks on right rear quarter panel a day or so after taking possession of car); BMW of North America, Inc., supra, (purchaser did not discover repainting until nine months after purchase, when employee of automobile "detailing" shop informed him of this fact); Young v. Serra Volkswagen, Inc., 579 So.2d 1337 (Ala.1991) (after owning car one and a half years, purchaser learned that car had been damaged and repainted, when paint began flaking on left side of car and when a panel on left side of car did not fit properly); Couch v. Woody Anderson Ford, Inc., 558 So.2d 888 (Ala.1989) (purchaser discovered three months after buying car that passenger-side door had been repainted). In his deposition, Richard Hines testified that he did not learn of the alleged repainting or even notice the discrepancy in hue between the paint on the left rear quarter panel and the paint on the rest of the Oldsmobile Calais until several months after he had purchased the car. Circumstantial evidence presented by the Hineses constitutes substantial evidence from which an impartial trier of fact could infer that General Motors performed the repainting and, therefore, had knowledge of this fact. This disparity in the relative amounts of information possessed by the parties suggests a duty to disclose.
Considering the relation of the parties, the value of the fact allegedly suppressed, and their relative knowledge, we hold that in the particular circumstances of this case, the plaintiffs presented substantial evidence on which the factfinder could conclude that General Motors had a duty to disclose the type of repainting allegedly performed on the left rear quarter panel of the Oldsmobile Calais.[5] A duty to disclose may be found to exist when one person has superior knowledge of a material fact and the failure to disclose that fact would induce another person to take an action he or she would not take if they knew that fact. In holding that under the facts alleged by these plaintiffs the factfinder could find that General Motors had a duty to disclose, however, we by no means recognize, or impose on automobile manufacturers, a general duty to disclose every repair of damage, however slight, incurred during the manufacturing process. Nor does our holding require automobile manufacturers to supply consumers with defect-free new automobiles; it only requires them to disclose material defects and repairs that are known to them. We limit our holding to the particular facts of this casemost important among them, the disparity in the amount of information possessed by the parties, the effectively irreparable nature of the undisclosed defect, and *922 the significant effect a defect like this has on the fair market value of a car.
Relying on General Motors Corp. v. Green, 173 Ga.App. 188, 325 S.E.2d 794 (1984), the defendants argue that the "Predelivery service" provision of the "1991 Warranty and Owner Assistance Information" manual constituted a sufficient disclosure of the possibility of a repainting of the quarter panel to correct defects in the paint finish and that, therefore, they did not breach any duty they may have had to disclose such repainting.
This Court has held that the signing of a disclaimer or a statement disclosing the possibility of damage to a vehicle incurred while it was in the production process, while it was in transit to the dealer, or while it was in the possession or control of the dealer precludes a new car purchaser from recovering on claims of deceit, misrepresentation, and suppression of a material fact, based on allegations of damage within the purview of the disclaimer or disclosure statement. Planchard v. Dobbs Mobile Bay, Inc., 529 So.2d 942 (Ala.1988); see also Young v. Serra Volkswagen, Inc., 579 So.2d 1337 (Ala.1991); Couch v. Woody Anderson Ford, Inc., 558 So.2d 888 (Ala.1989); Page v. Dobbs Mobile Bay, Inc., 599 So.2d 38 (Ala.Civ.App.1992). This rule is based on a purchaser's knowing and intelligent acknowledgment of the possibility of such damage or a knowing and intelligent waiver of legal rights, both of which must be evidenced by the signature of the new car purchaser beneath a disclaimer or disclosure statement on the contract of sale or "buyer's order." In this case, the disclosure the defendants say was sufficient was printed in the owner's manual in such a manner that it did not stand out. According to Richard Hines's undisputed deposition testimony, the owner's manual was in the glove compartment of the Oldsmobile Calais during the sale of the car and the negotiations leading to the sale. In the circumstances of this case, the "pre-delivery service" clause contained in the owner's manual hardly constitutes a sufficient disclosure of the paint damage to the Oldsmobile Calais and the repainting performed in an attempt to correct it.
Last, we address whether the Hineses submitted substantial evidence that General Motors intentionally suppressed the fact that it had repainted the left rear quarter panel of the Oldsmobile Calais.[6]
In their complaint, however, the Hineses do not allege merely that General Motors breached a duty to disclose; they allege that General Motors intentionally breached this duty with an intent to deceive.[7] In their brief, the Hineses contend that they presented sufficient circumstantial evidence to establish that General Motors knew of the repainting and that it intentionally suppressed this fact with an intent to deceive. General Motors contends principally that the General Motors warranty, which contained a disclosure of the possibility of factory repairs to defects in the paint finish, undisputedly shows that the defendants had no present intent to deceive the Hineses.
Viewing the evidence in favor of the Hineses and resolving all reasonable doubts in their favor, we hold that the Hineses presented substantial evidence from which a reasonable trier of fact could infer that General Motors intentionally suppressed the fact that it had repainted the left rear quarter panel. Circumstantial evidence concerning damage to the paint finish and the repainting of the quarter panel, which undisputedly occurred while the Oldsmobile Calais was in the possession of the General Motors assembly plant, the deposition testimony of the Hineses, and the General Motors guideline *923 for repair and disclosure of damage and repair to vehicles during the manufacturing process constituted substantial evidence from which an impartial trier of fact could infer that General Motors knew of the repainting; that the fact of such repainting would be material to a consumer's decision whether to purchase the Oldsmobile Calais; and that General Motors intentionally established a policy of repair and nondisclosure for the purpose of deceiving consumers as to the true condition of its vehicles. See BMW of North America, Inc. v. Gore, supra. The existence of a warranty provision in the owner's manual, disclosing the possibility of defects in regard to things such as the paint finish, does not somehow negate this inference of a present intent to deceive; at most, it creates a genuine issue of fact. See BMW of North America, Inc., 646 So.2d at 621 (jury assessed $4 million in punitive damages notwithstanding plaintiff's signing of "Acknowledgement of Disclosure" form stating that the car may have sustained transit damage).
The second issue is whether the Oldsmobile Calais was "new" as a matter of law when it was sold.
The Hineses argue that the circuit court erred in entering a summary judgment in favor of all the defendants on their claim that the defendants fraudulently represented the Oldsmobile Calais as a "new" car. The Hineses contend that a claim of fraud based on an alleged misrepresentation of a car's "newness" may encompass any defect not in accordance with the reasonable expectations of a consumer. Because, they say, an impartial trier of fact could infer that a car with a repainted left rear quarter panel is not in accordance with what consumers reasonably expect in regard to a "new" car, a question of fact exists as whether the defendants misrepresented the Oldsmobile as a "new" car.
Whether an automobile is "new" is determined by applying the "reasonable expectation" standard first enunciated in Mathis v. Jim Skinner Ford, Inc., 361 So.2d 113 (Ala.1978):
"Purchasers have a right to assume that new automobiles will perform in accordance with reasonable expectations and in accordance with implied representations inherent in marketing such products. Absent express representation, implied representations are not uncommon in the sale of new products, and reliance thereon may be shown by the totality of the circumstances and the underlying nature of the transaction itself. These concepts have long been recognized in actions based upon breach of an implied warranty and, under proper circumstances, may support a tort action for misrepresentation."
361 So.2d at 115. Under Mathis, implied representations that a vehicle is "new" may arise out of the mere sale of a vehicle not previously owned, and such representations, if false, may support a claim of fraud. Dodd, 626 So.2d at 1291. Thus, Mathis states a special rule of fraud, which relieves the plaintiff of the burden of establishing a specific representation made by the seller to the plaintiff that a car was "new" when it was sold and the burden of establishing the plaintiff's specific reliance on that representation. Mathis, 361 So.2d at 115.
The type of repair or alteration that may support a claim of fraud based on a misrepresentation that a car is "new" is a repair or alteration of such an extent and magnitude that an impartial trier of fact could reasonably infer from it either that the car had been previously sold or that it had been so damaged or altered that a reasonable person, in accordance with the reasonable consumer expectations standard, would not consider it to be a "new" product. "Except in rare circumstances, where a car has undergone repair or alteration so major that it is obviously not `new' or so minor that it is undisputedly is `new,' the question of whether a car initially sold with repaired damage was `new' when it was sold is one of fact." Dodd, 626 So.2d at 1292; Boulevard Chrysler-Plymouth, Inc. v. Richardson, 374 So.2d 857, 859-60 (Ala.1979).
Contrary to the suggestion of the Hineses, the "reasonable expectations" rule of Mathis does not impose on sellers of new vehicles a general duty in tort to sell vehicles that meet reasonable consumer expectations; rather, it imposes a duty in tort not to pass off a *924 vehicle as "new" when it has been previously sold or has been so damaged or altered that a reasonable person would not consider it a "new" product, in accordance with reasonable consumer expectations. After reviewing the evidence in favor of the Hineses and resolving all doubts in their favor, we hold that they failed to present substantial evidence that would support an inference that the Oldsmobile Calais was not "new" when it was sold to the Hineses.
The third issue is whether the circuit court erred in entering the summary judgment in favor of the defendants on the ground that under § 6-11-20 the plaintiff failed to present "clear and convincing" evidence of an intent on the part of the defendants to deceive or of oppressive, malicious conduct, for the purpose of submitting the issue of punitive damages to the jury.
To resolve this issue, we must interpret two statutes, § 12-21-12 and § 6-11-20(b), Ala.Code 1975. Section 12-21-12 states, in pertinent part:
"(a) In all civil actions brought in any court of the state of Alabama, proof by substantial evidence shall be required to submit an issue of fact to the trier of the facts. Proof by substantial evidence shall be required for purposes of testing the sufficiency of the evidence to support an issue of fact in rulings by the court, including without limitation, motions for summary judgment, motions for directed verdict, motions for judgment notwithstanding the verdict, and other such motions or pleadings respecting the sufficiency of evidence.
". . . .
"(c) With respect to any issue of fact for which a higher standard of proof is required, whether by statute, or by rule or decision of the courts of the state, substantial evidence shall not be sufficient to carry the burden of proof, and such higher standard of proof shall be required with respect to such issue of fact."
(Emphasis added.)
Section 6-11-20(a) states, in pertinent part:
"(a) Punitive damages may not be awarded in any civil action ... other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff."
(Emphasis added.)
The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Gholston v. State, 620 So.2d 719 (Ala.1993); Ex parte McCall, 596 So.2d 4 (Ala.1992). The legislature's intent may be discerned from the language of the act, the reason and necessity for the act, and the goal sought to be obtained. Gholston. When a statutory pronouncement is clear and not susceptible to different interpretations, it is a paramount judicial duty to abide by that clear pronouncement. Macon v. Huntsville Utilities, 613 So.2d 318 (Ala.1992). If a statute is susceptible to two constructions, one of which is workable and fair and the other unworkable and unjust, the court will assume that the legislature intended that which is workable and fair. Ex parte Hayes, 405 So.2d 366 (Ala.1981); State v. Calumet & Hecla Consol. Copper Co., 259 Ala. 225, 66 So.2d 726 (Ala.1953); State Dep't of Revenue v. Delta Air Lines, Inc., 549 So.2d 1352 (Ala.Civ.App.1989); State Health Planning & Development Agency of Alabama v. Baptist Medical Center, 446 So.2d 619 (Ala.Civ. App.1983). See generally 2A Norman J. Singer, Sutherland Statutory Construction § 45.12, at 61 (5th ed. 1992).
Citing Coca-Cola Bottling Co. United, Inc. v. Stripling, 622 So.2d 882 (Ala.1993), and Big B, Inc. v. Cottingham, 634 So.2d 999 (Ala.1993), the defendants argue that the Hineses failed to present evidence, sufficient under the § 6-11-20 "clear and convincing" standard, that the defendants consciously and deliberately engaged in fraud; and they contend, therefore, that the circuit court properly entered the summary judgment on the claims of intentional suppression and fraudulent misrepresentation. The circuit court held, and the defendants now argue, the general proposition that § 6-11-20 requires a plaintiff, seeking both punitive and *925 compensatory damages in an action based on claims of fraud, to present "clear and convincing evidence" that the defendant consciously and deliberately engaged in fraud, in order to submit a "claim of punitive damages" to the jury.
The language of § 12-21-12(a) and (c) and § 6-11-20(a) belies the construction of § 6-11-20(a) advocated by the defendants. Section 12-21-12(a) establishes the quantum of evidence necessary to submit an issue of fact to the trier of fact, when the sufficiency of the evidence to support an issue of fact is tested. Unless a higher standard is provided by statute, rule, or decision, substantial evidence is required to submit an issue of fact to the trier of fact. § 12-21-12(c). This statute limits the authority of a trial court to submit an issue of fact to the trier of fact.
Section 6-11-20(a), however, limits the authority of the trier of fact to award punitive damagesthat is, a trier of fact may not award punitive damages unless the plaintiff proved by "clear and convincing" evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff. Thus, by its very language, § 6-11-20 does not define the standard for determining whether a genuine issue of fact, material to a claim alleged by the plaintiff, exists for the trial court to submit to the trier of fact; rather, it defines the standard of proof for determining whether the trier of fact has, or had, the authority to award punitive damages. This distinction becomes clearer when viewed in the context of the substantive law of punitive damages and our Rules of Civil Procedure.
If, for example, a plaintiff alleges a claim of wantonness and demands in the ad damnum clause of the complaint only compensatory damages, § 12-21-12 clearly applies, and the plaintiff, to defeat the defendant's summary judgment motion, need only present substantial evidence creating a genuine issue of material fact. If, however, in the complaint the same plaintiff demands punitive, as well as compensatory, damages, does § 6-11-20 now apply, instead of § 12-21-12, to require the plaintiff to present clear and convincing evidence of wantonness to create a genuine issue of fact? The answer is "no."
By its very language, § 6-11-20 does not apply to determine whether, in opposition to a motion for a summary judgment, the plaintiff has presented sufficient evidence creating a genuine issue of fact to submit to the trier of fact as to one or more elements of a claim. Section 12-21-12, not § 6-11-20, governs the question whether the plaintiff has presented sufficient evidence creating a genuine issue as to a fact material to one or more elements of a claim. By contrast, § 6-11-20 establishes the degree of proof necessary to permit the trier of fact to award punitive damages. Just as, for example, a plaintiff must prove wantonness by a preponderance of the evidence to recover compensatory damages, the plaintiff must prove wantonness by clear and convincing evidence to authorize the trier of fact to award punitive damages.
The problem with the construction advocated by the defendants is that the summary judgment procedure of Rule 56, Ala.R.Civ.P., applies to "claims" or causes of action, either in whole or in part, and that, technically speaking, there is no such thing as a "claim of punitive damages." Rather, there are claims on which our law authorizes the trier of fact to impose punitive damages if certain wrongfulness is proved by a sufficient weight of the evidence. The question whether the requisite wrongfulness was proved by clear and convincing evidence to authorize the trier of fact to award punitive damages is not material to any element of a claim.
The question whether a plaintiff proved the requisite wrongfulness by a sufficient weight of the evidence to allow the jury to award punitive damages is but one issue of damages for a trier of fact when it is presented a claim on which the law authorizes the award of punitive as well as compensatory damages. For example, a claim of wantonness is not a "claim of punitive damages"; rather, it is a claim on which, under our law, a trier of fact has the authority in its discretion to impose punitive damages. If sufficiently proved, a claim of wantonness can *926 legally support either an award of compensatory damages or an award of both compensatory and punitive damages. Because punitive damages are awarded on a tort claim that ordinarily may otherwise be submitted to the jury on substantial evidence, the question whether there is clear and convincing evidence of wrongful conduct that will support an award of punitive damages does not arise until the trial, when a defendant objects to the submission to the jury of the question of punitive damages on the ground that clear and convincing evidence of the requisite wrongful conduct has not been presented. To construe §§ 12-21-12 and 6-11-20 to require a circuit court to enter a summary judgment on a claim of wantonness because the plaintiff did not present clear and convincing evidence of wantonness and because the trier of fact might in its discretion award punitive damages is simply unworkable and patently unjust, because the question of punitive damages is not the only question of damages for the trier of fact. The question of compensatory damages remains. If, in opposition to a motion for a summary judgment, the plaintiff presented substantial evidence creating a genuine issue of material fact and if the plaintiff proved his claim by at least a preponderance of the evidence, the plaintiff still has the right to have the trier of fact determine whether he is entitled to compensatory damages.
The analysis above is supported and illustrated by the reasoning of this Court in Sears, Roebuck & Co. v. Harris, 630 So.2d 1018 (Ala.1993). In Sears, Roebuck & Co. the Court addressed the question whether the plaintiffs had presented clear and convincing evidence of wantonness, even though the defendants had raised the issue only in a motion for j.n.o.v., new trial, or remittitur. The question should ordinarily be raised before the case is submitted to the jury, because the jury should be instructed that it can award punitive damages only upon proof by clear and convincing evidence. In Sears, the circuit court so instructed the jury.
We hold, therefore, that the circuit court erred in entering the summary judgment on the Hineses' claims of intentional suppression and fraudulent misrepresentation on the ground that they had failed to establish by clear and convincing evidence that the defendants consciously or deliberately engaged in fraud.
Based on the foregoing, we affirm the summary judgment insofar as it held in favor of Riverside Chevrolet and Tommy Hatchett on the claims of intentional suppression and fraudulent misrepresentation. We also affirm it insofar as it held in favor of General Motors on the claim of fraudulent misrepresentation; but we reverse the summary judgment insofar as it held for General Motors on the claim of intentional suppression.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
HORNSBY, C.J., and SHORES, KENNEDY, INGRAM and COOK, JJ., concur.
MADDOX, J., concurs in part and dissents in part.
MADDOX, Justice (concurring in part and dissenting in part).
I would affirm the judgment of the trial judge; therefore, I concur in part and dissent in part.

On Application for Rehearing
ALMON, Justice.

APPLICATION OVERRULED.
SHORES, KENNEDY, INGRAM and COOK, JJ., concur.
MADDOX, J., dissents.
MADDOX, Justice (dissenting).
Although I concurred in part and dissented in part on original submission, I did not state my reasons for dissenting. On application for rehearing, I address specifically some of the reasons for that dissent.
In their brief on application for rehearing, the defendants argue that this Court, in reviewing the summary judgment, incorrectly relied on inadmissible hearsay evidence that the defendants say was included in the affidavit of expert Steven Johnsen and in an *927 unauthenticated document entitled "General Motors Guideline."
This Court, on original deliverance, did not address the issue of the admissibility of the evidence, although I believe that this Court, in reviewing the judgment de novo, should have addressed that issue.
Rule 56(e), Ala.R.Civ.P., provides:
"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."
The role of this Court when reviewing the disposition of a motion for summary judgment is plain: "We utilize the same standard as ... the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala.R.Civ.P. On our review, no presumption of correctness attaches to the summary judgment, and we review it de novo. See Hipps v. Lauderdale County Board of Educ., 631 So.2d 1023 (Ala. Civ.App.1993).
It is my opinion that the trial court did not consider, and that this Court should not consider, inadmissible evidence. Rule 56(e), Ala. R.Civ.P. Because this Court, in reversing the summary judgment on original deliverance, considered evidence that I believe was inadmissible, I must respectfully dissent from that reversal and from the denial of the application for rehearing.
NOTES
[1] Included within this category is damage whose estimated cost of repair exceeds 60% of the suggested retail price of the vehicle or whose repair requires the replacement of "integral structural body members."
[2] Although the parties make no argument regarding it, we note that § 8-19-5(22), Ala.Code 1975, part of the Deceptive Trade Practices Act, is not applicable to the facts of this case. Section 8-19-5(22) provides that for purposes of determining whether the failure of a seller of a new motor vehicle to disclose "material damage" to a motor vehicle is a deceptive act or practice, damage is "material" only if the cost to repair the damage exceeds 3% of the manufacturer's suggested retail price or $500, whichever is greater. Section 8-19-5(22) only defines what is a "deceptive act[] or practice[]" for purposes of the special remedies provided by the Deceptive Trade Practices Act. It therefore does not alter the general common law of fraud. Further, § 8-19-15, also part of the Deceptive Trade Practices Act, makes it clear that the remedies available under that Act and the remedies available under the common law or other statutory law are "mutually exclusive." Because the Hineses made no claim under the Deceptive Trade Practices Act, § 8-19-5(22) is inapplicable.
[3] We note that in their complaint the Hineses did not allege that the failure of Riverside Chevrolet or its agent Tommy Hatchett to disclose that the "the beaded paint" had been "buffed out" constituted a suppression of a material fact.
[4] Suppression is a species of fraud, and these general principles apply to a duty not to suppress a material fact as well as to a duty not to make a material misrepresentation.
[5] We distinguish this case from our recent decision in Dodd v. Nelda Stephenson Chevrolet, Inc., 626 So.2d 1288 (Ala.1993), in which the Court held that, in the circumstances of the case, the plaintiffs, purchasers of a new car, failed to establish that a defendant automobile dealer either actively concealed, or owed any duty to disclose, that a Chevrolet Camaro, which the plaintiffs bought later from another dealership, had been damaged and repainted. In Dodd, the plaintiffs argued no legal or factual basis for imposing a duty to disclose in the circumstances of the case. 626 So.2d at 1294.
[6] Because we hold that the circuit court properly entered the summary judgment in favor of Riverside Chevrolet and Tommy Hatchett on the claim of intentional suppression, we address the "intent" issue only as it applies to General Motors. The parties also argued this issue with regard to the claim of fraudulent misrepresentation; however, because we hold that circuit court properly entered a summary judgment in favor of all the defendants on that claim, we pretermit discussion of this issue with regard to the claim of fraudulent misrepresentation.
[7] "Section 6-5-102 does not require proof of an intent to deceive; rather, a breach of the defendant's duty to disclose the suppressed facts is sufficient to trigger liability." Baker v. Bennett, 603 So.2d 928, 935 (Ala.1992); see also Burlington Northern R.R. v. Warren, 574 So.2d 758 (Ala. 1990).