INGRAM, Justice.
The plaintiff, Stanley Cook, appeals from a summary judgment entered in favor of *814 the defendant, Trinity Universal of Kansas (hereinafter referred to as “Trinity”), on Cook’s bad faith claim. That summary judgment was made final pursuant to Rule 54(h), A.R.Civ.P.
On July 1, 1987, Cook’s motor vehicle, a 1985 Chevrolet S-10 Blazer, was stolen. Cook had a policy of insurance with Trinity covering the vehicle. The insurance policy provided that Trinity’s limit of liability for loss would be the lesser of the:
“1. Actual cash value of the stolen or damaged vehicle; or
“2. Amount necessary to repair or replace the property.”
The policy further provided that “[a]n adjustment for depreciation and physical condition will be made in determining actual cash value at the time of the loss.”
On July 7, 1988, Cook notified Trinity of the theft of the vehicle. On July 14, 1988, Pat Woods, a claims adjuster for Trinity, offered to pay Cook $5,700 less his deductible, on the condition that Cook execute a release and final settlement of all claims against Trinity. Cook refused to accept the offer, because he believed that the vehicle was worth more than $5,700. Ms. Woods told Cook that she would consider any documented proof indicating that the vehicle was worth more than $5,700.
A few days after their telephone conversation, Cook received a letter from Woods, dated July 19, 1988, which outlined the offer. Additionally, Woods enclosed a draft in the amount of $5,600 and a draft for alternate transportation expenses in the amount of $200. On the reverse side of the draft for $5,600, the following was printed: “Payee’s endorsement hereon constitutes a full release and final settlement of any and all claims for loss on the date shown on the face of the draft.” On July 22, 1988, Woods received an invoice from McClary Tire Company, which indicated that Cook had paid $495.00 for repairs, maintenance, and a new set of tires on April 28, 1988.
On July 27, 1988, Cook’s attorney wrote Trinity a letter, stating that the actual cash value of the vehicle was $6,500 as opposed to the $5,700 designated by Trinity. The letter further stated that Trinity owed Cook $300 for alternate transportation expenses as opposed to the $200 designated by Trinity. The letter requested that Trinity either pay the amount that Cook felt he was owed, $6,500, or pay the amount not in dispute, $5,600, without requiring a release. Enclosed therewith was the $5,600 draft, without Cook’s endorsement. In response, Woods wrote a letter to Cook’s attorney, in which Woods offered to pay an additional $100 for alternate transportation expenses when documentation of those expenses was received. Additionally, the letter outlined the basis for arriving at the actual cash value of $5,700 and requested that Cook outline his basis for arriving at $6,500. On December 16, 1988, Woods received a letter from Cook’s attorney, which included statements from James McClary, owner and operator of McClary Tire Company, and Jimmy Powers, a used car dealer, concerning the condition and valuation of Cook’s vehicle. Both McClary and Powers stated that, in their opinion, the vehicle had a fair market of $6,500 to $7,000.
In December 1988, Woods sent Cook’s attorney a draft in the amount of $6,000; no response was ever received from the attorney. Similarly, in May 1989, another draft was mailed in the amount of $6,250 to Cook’s attorney; no response was ever received from the attorney. It should be noted that all of the drafts conditioned payment on Cook’s agreement to release Trinity from all claims that he might have against them concerning the loss of the vehicle.
On August 4, 1989, Cook filed suit against numerous defendants, including Trinity. In his only claim against Trinity, Cook alleged that Trinity had committed the tort of bad faith failure to pay an insurance claim by conditioning payment of the undisputed portion of Cook’s claim ($5,600) on his agreement to sign an unconditional release of all claims that he might have against Trinity concerning the loss of his vehicle. Additionally, Cook alleged that Trinity committed the tort of bad faith by failing to refund the full amount of his unearned insurance premium. As indicated earlier, the trial court entered a partial *815 summary judgment in favor of Trinity on Cook’s bad faith claims.
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for entering summary judgment. That rule requires the trial court to determine (1) that there is no genuine issue of material fact and (2) that the moving party is entitled to a judgment as a matter of law. Rule 56 is to be read in conjunction with the “substantial evidence rule” (§ 12-21-12, Ala.Code 1975) for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). See also East v. Wal-Mart Stores, Inc., 511 So.2d 459 (Ala.1991).
In National Security Fire & Casualty Co. v. Bowen, 417 So.2d 179 (Ala.1982), this Court set forth the elements of the tort of bad faith:
“(a) an insurance contract between the parties and a breach thereof by the defendant;
“(b) an intentional refusal to pay the insured’s claim;
“(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
“(d) the insurer’s actual knowledge of the absence of any legitimate or arguable reason to refuse to pay the claim.
“In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.”
Id., at 183.
Additionally, if the evidence produced by either party creates an issue of fact with respect to the contract claim, the bad faith claim must fail. In order to present a prima facie case of bad faith in a “normal” case, the offered proof must show that the plaintiff is entitled to a directed verdict on the contract claim. National Savings Life Ins. Co. v. Dutton, 419 So.2d 1357 (Ala. 1982). Although the present case does not involve a directed verdict, the Court in Kiz-ziah v. Golden Rule Ins. Co., 536 So.2d 943 (Ala.1988) (quoting from Armstrong v. Life Ins. Co. of Virginia, 454 So.2d 1377 (Ala. 1984), overruled on other grounds, Hickox v. Stover, 551 So.2d 259 (Ala.1989)), noted:
“ ‘[T]he standards of review for a directed verdict and a summary judgment are essentially the same. Both are proper only where there is a complete absence of proof on a material issue or where there are no disputed questions of fact on which reasonable people could differ.’ ”
Id., at 946.
In the instant case, it is without dispute that Trinity never refused to pay Cook’s claim. In fact, the record reveals that Trinity, on numerous occasions, mailed Cook drafts ranging from $5,600 to $6,250 ih an attempt to satisfy Cook’s claim. Nevertheless, Cook contends that Trinity committed the tort of bad faith by conditioning payment of his claim on his agreement to sign a full release of all claims arising out of the loss of the vehicle. We disagree.
It scarcely requires reference to authority to conclude that the right of parties to settle disputes through compromise is recognized and, in fact, encouraged by the courts. Grimes v. Liberty National Life Ins. Co., 514 So.2d 965 (Ala.1987). Obviously, the philosophical underpinnings of a compromise or settlement would be thwarted if, at a later date, one of the parties to the compromise was allowed to litigate the matter on grounds that he was not fully satisfied. Hence, the party attempting to satisfy his obligation or debt is wise to demand that the creditor, as a condition of settlement, sign a release acknowledging extinguishment of the debt,
With respect to Cook’s remaining argument regarding bad faith, it may be generally stated that unearned premiums, if returnable, are due to the insured. Globe & Rutgers Fire Ins. Co. v. Van Antwerp Realty Corp., 243 Ala. 524, 10 So.2d 849 (1942); 6 Couch on Insurance § 34:88, at 941-42 (1985). However, under the facts presented, Cook failed to present substantial evidence tending to rebut Trini *816 ty’s prima facie showing that it did refund to Cook the correct amount of the unearned premiums to which he was entitled. In other words, the record is devoid of any evidence tending to show that Trinity breached its contract with Cook regarding the refund; hence, Cook’s remaining allegation of bad faith must also fail.
For the reasons stated above, we agree with the trial court’s determination that there exists no genuine issue of material fact regarding Cook’s claims of bad faith against Trinity.
Therefore, the judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
ALMON, ADAMS, STEAGALL and KENNEDY, JJ., concur.