THIGPEN, Judge.
This is a fraud case.
In April 1990, George Iliff (husband) and Rosa Iliff (wife) filed suit against Norwood Hodges Motor Co., Inc. (Hodges), and various fictitious parties, alleging fraud, misrepresentation, and deceit in the sale of an automobile, and seeking damages. In February 1991, the Iliffs, pursuant to a pretrial order, listed damages as both compensatory and punitive. The case was ultimately tried before a jury in August 1992. The trial court granted Hodges’s motion for a directed verdict against the husband, and it also granted Hodges’ motion for a directed verdict as to punitive damages. The jury verdict assessed damages against Hodges in favor of the wife in the amount of one dollar. The Iliffs appeal, contending that the trial court erred in granting Hodges’s motion for a directed verdict regarding punitive damages where the jury found intentional fraud and awarded compensatory damages.
A motion for a directed verdict tests the sufficiency of the opponent’s evidence. Danford v. Arnold, 582 So.2d 545 (Ala.1991). “The party seeking a directed verdict must demonstrate that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law.” Danford at 546. Furthermore, the trial court must view the evidence in a light favoring the nonmovant. Danford, supra.
The record reveals that on August 10, 1988, the Iliffs began negotiations with Hodges for a new automobile and that they entered into a purchase agreement for a 1988 Mazda 626 on that date. Financing arrangements delayed the purchase date until August 25,1988.
According to the husband, he and the wife soon noticed minor differences between the car they agreed to purchase on August 10, and the car that was actually delivered to them on August 25. The husband testified that when he questioned the differences, Mike Robertson, a salesman for Hodges, assured him that it was the same car. The husband also testified that Dale McCullars, Hodges’s finance manager at the time of the transaction, later informed the husband that he had received a different car from the one agreed upon.
The husband testified that although he could not be positive, he thought that the original car had an optional suspension adjustment system on the left side of the dash, optional “pinstriping,” and a lower mileage reading than that of the delivered car. He further testified regarding a price difference of $700, but he offered no. other evidence to substantiate the claim. Record evidence discloses that the wife paid the same amount for the delivered ear that was agreed upon for the original car. According to the Iliffs, Robertson told them that the original ear’s air conditioning system was dealer-installed, and therefore, that it was superior to a factory-installed system. The wife testified that the ear they selected had a vinyl headliner, pinstriping, and “sportier” hubcaps.
Both Robertson and McCullars testified that they informed the wife, prior to the actual purchase, that the car she was receiving, although identical to the original car, was not the exact car. McCullars also testified that the car which the Iliffs had selected on August 10 was sold to another individual, whom McCullars had observed at the dealership speaking with the Iliffs and comparing the two cars.
Albert Naragon, a district service manager, testified that all 1988 Mazda 626 automobiles had the same hubcaps and cloth headliners; that, according to invoices, neither the original nor the delivered ear had the optional suspension adjustment system; and *245 that the only apparent difference between the two cars in question was that the original car’s air conditioner was dealer-installed, while the delivered car’s air conditioner was factory-installed.
The individual who actually purchased the original car testified by deposition that he bought the car at Hodges on August 17, 1988, and that it had a cloth headliner and no pinstripes. He also testified that when he returned to the dealership on August 22 to complete some paperwork, he observed an unidentified man and woman looking at his car. He testified that the couple indicated to him that he had bought their car, but that it did not matter because they were going to buy another one just like it.
Upon review of the record, we find that there exists a controverted material fact. The wife claimed that she was not told about the different ear until after the sale, while Robertson and McCullars claimed that the Iliffs were informed of the change prior to the sale. When the wife’s testimony is viewed in the light most favorable to her position, there exists a genuine issue of material fact. Therefore, the trial court erred in granting Hodges’s motion for a directed verdict. Danford, supra.
Hodges asserts that the jury’s verdict could have been based on innocent misrepresentation, and therefore, any error by the trial court with regard to punitive damages was harmless. “Punitive damages are not allowed unless the fraud is shown to be intentional or reckless.” Christopher v. Heimlich, 523 So.2d 466, 467 (Ala.Civ.App.1988).
The trial court gave jury charges for willful misrepresentation, reckless misrepresentation, mistaken or innocent misrepresentation, and suppression of truth. The record does not reveal upon which theory the jury-found for the wife; however, since Hodges claimed to have informed the Iliffs that the ear they purchased was not the one they selected earlier, it appears likely that the jury’s verdict was based upon a theory of either willful misrepresentation or suppression of truth.
An award of nominal. damages will support an award for punitive damages. First Bank of Boaz v. Fielder, 590 So.2d 893 (Ala.1991). Based on the foregoing, we find that the trial court erred in granting Hodges’s motion for a directed verdict with regard to punitive damages. The trial court’s judgment is due to be reversed and the cause remanded for further proceedings on the issue of punitive damages.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and YATES, J., concur.