680 So.2d 245 (1996)
Ex parte NORWOOD HODGES MOTOR COMPANY, INC.
(Re: George Iliff and Rosa Iliff v. Norwood Hodges Motor Company, Inc.).
1930150.
Supreme Court of Alabama.
July 3, 1996.
*246 Arthur F. Fite III of Merrill, Porch, Dillon & Fite, P.A., Anniston, for Petitioner.
J. Callen Sparrow of Sparrow & Lavette, Birmingham, and Bruce J. McKee of Hare, Wynn, Newell & Newton, Birmingham, for Respondent Rosa Iliff.

On Application for Rehearing
COOK, Justice.
The opinion of September 22, 1995, is withdrawn and the following opinion is substituted therefor.
This is a fraud case involving the sale of an automobile. We granted certiorari review to determine whether the Court of Civil Appeals erred in assessing the standard of proof required to charge the jury on a punitive damages claim. We affirm.
Rosa Iliff and her husband George Iliff sued Norwood Hodges Motor Company ("Hodges"), seeking damages for fraud, deceit, and misrepresentation. They alleged that on August 10, 1988, they had negotiated with Hodges to buy a sapphire blue 1988 Mazda 626 automobile. The Iliffs alleged that Hodges did not disclose to them that the sapphire blue Mazda 626 Rosa Iliff ultimately purchased on August 25, 1988, was not the same vehicle as to which she and her husband had negotiated 15 days earlier. The trial court dismissed George Iliff's claim against Hodges after the Iliff's had presented their case-in-chief, stating that Mr. Iliff lacked standing because Rosa alone had actually obtained the financing for the purchase of the car. She asserts that Hodges represented to her that the car she purchased was the same car the Iliffs had seen on August 10. She claims there were fewer options on the second car, but that Hodges charged her the price she had agreed to pay for the first car.
At trial, George Iliff testified that his friend Dale McCullars, who was the finance manager at Hodges, had told him about the car and had invited him to come to the dealership to see it. He said that on August 10 he and his wife tested a blue Mazda. He said that automobile was equipped with dealer-installed air conditioning (which he said Hodges salesman Mike Robertson represented as preferable to a system installed at the port of entry), a vinyl headliner, pinstriping, sporty hubcaps, and a factory-installed option on the dashboard that was later identified as a suspension-control device. Mr. Iliff said the car's odometer had approximately 28 miles on it.
Rosa Iliff obtained the financing to purchase the car. She testified that the loan process took about two weeks; she said that after when she received the check for the loan proceeds, she telephoned Hodges, on August 25, and asked whether it still had the car she had tested on August 10 and that salesman Robertson responded affirmatively. She said that in fact Hodges that date had a new Mazda, but that it was not the same car *247 she and her husband had seen on August 10. She said that it was equipped differently. Specifically, she said that its air conditioning unit had been installed at the port of entry; that it had a cloth headliner; that it had no pinstriping, sporty hubcaps, or factory installed option on the dashboard; and that it had 134 miles on its odometer.
When the Iliffs arrived to pick up the car that evening, they did not notice that the car they were picking up was not the same one they had seen on August 10. They testified that the salesman, Robertson, was in a hurry to attend his son's baseball game. They said Robertson had prepared all the paperwork for the sale and quickly moved them through the signing process. By the time the Iliffs arrived at their home, they said, they had recognized some differences.
George Iliff testified that he telephoned Hodges the next day to inquire about the differences and that, initially, Robertson insisted that the car the Iliffs had driven home was the same car they had tested on August 10. Dale McCullars later told them that the car was not the same one.
The Iliffs also introduced documentary evidence to prove that the first car had cost Hodges more than the second car and that the dates on some of the documents had been changed after Rosa Iliff had signed them.
The testimony from employees of Hodges painted a different picture. Mike Robertson testified that he told Mrs. Iliff when she telephoned on August 25 that the first car they had seen was no longer on the lot but that there was an identical car there for sale.
Al Naragon's testimony rebutted Mrs. Iliff's contention that the two cars were equipped differently. Naragon explained that an air conditioning unit installed at the port of entry was not different from one installed at the dealership, because both were Mazda factory units. Naragon further explained that the factory-installed suspensioncontrol button was available only on the "luxury sports edition" of the car and that neither the car Mrs. Iliff had tested nor the one she purchased was a luxury sports edition model. Naragon also testified that all the headliners in the Mazda 626 were cloth and that the 626 models all came with only one type of hubcap.
Franklin Stephens purchased the original car the Iliffs had tested. He testified that his car had a cloth headliner and plastic hubcaps, no pinstriping, and no factory-installed suspension option. Stephens also testified that he went back to the dealership after he had purchased the car and spoke to a couple who told him that they had negotiated to buy his car but that because Hodges had another just like it on the lot, they were going to purchase the other vehicle. Hodges's finance manager Dale McCullars testified that he saw the Iliffs talking with Stephens and comparing the two cars.
At the close of all of the evidence, the trial court granted Hodges's motion for a directed verdict regarding punitive damages, holding that the evidence of intentional fraud did not meet the "clear and convincing" standard set out in § 6-11-20(a), Ala.Code 1975. The jury was not charged on punitive damages; it returned a verdict for Iliff and awarded her nominal damages of $1.00.
The Court of Civil Appeals reversed. In its opinion, it wrote:
"The trial court gave jury charges for willful misrepresentation, reckless misrepresentation, mistaken or innocent misrepresentation, and suppression of the truth. The record does not reveal upon which theory the jury found for the wife; however, since Hodges claimed to have informed the Iliffs that the car they purchased was not the one they selected earlier, it appears likely that the jury's verdict was based upon a theory of either willful misrepresentation or suppression of truth.
"An award of nominal damages will support an award for punitive damages. First Bank of Boaz v. Fielder, 590 So.2d 893 (Ala.1991). Based on the foregoing, we find that the trial court erred in granting Hodges's motion for a directed verdict with regard to punitive damages."
680 So.2d 243, 245.
Hodges contends that the Court of Civil Appeals erred in reversing, because, Hodges says, the trial court correctly applied the "clear and convincing" standard of § 6-11-20(a). *248 The issue is best articulated thusly: when determining whether to submit an issue of punitive damages to the jury, does the trial court base its decision on whether the plaintiff has presented substantial evidence creating a disputed issue of fact, from which a jury can decide if the plaintiff has proven, by clear and convincing evidence, that the defendant consciously or deliberately engaged in fraud, or does it base its decision on whether the plaintiff presented clear and convincing evidence that the defendant so acted?
Our decision in Hines v. Riverside Chevrolet-Olds, Inc., 655 So.2d 909 (Ala. 1994), is dispositive of this case. There we held:
"[T]he question whether there is clear and convincing evidence of wrongful conduct that will support an award of punitive damages does not arise until the trial, when a defendant objects to the submission to the jury of the question of punitive damages on the ground that clear and convincing evidence of the requisite wrongful conduct has not been presented."
In Hines, the Hineses sought compensatory and punitive damages, alleging fraudulent misrepresentation and intentional suppression regarding the sale of a car. The trial court entered a summary judgment for the dealer, Riverside, because it determined that the Hineses had not proven misrepresentation and suppression by clear and convincing evidence. In reaching our holding, we first interpreted § 12-21-12 and § 6-11-20, Ala. Code 1975. Section 12-21-12(a) and (c) state:
"(a) In all civil actions brought in any court of the state of Alabama, proof by substantial evidence shall be required to submit an issue of fact to the trier of the facts. Proof by substantial evidence shall be required for purposes of testing the sufficiency of the evidence to support an issue of fact in rulings by the court, including without limitation, motions for summary judgment, motions for directed verdict, motions for judgment notwithstanding the verdict, and other such motions or pleadings respecting the sufficiency of evidence."
"(c) With respect to any issue of fact for which a higher standard of proof is required, whether by statute, or by rule or decision of the courts of the state, substantial evidence shall not be sufficient to carry the burden of proof, and such higher standard of proof shall be required with respect to such issue of fact."
Section 6-11-20 states, in pertinent part:
"(a) Punitive damages may not be awarded in any civil action, except civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff. ...
"(b) As used in this article, the following definitions shall apply:
"(1) Fraud. An intentional misrepresentation, deceit, or concealment of a material fact the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury.

"(2) Malice. The intentional doing of a wrongful act without just cause or excuse, either:
"a. With an intent to injure the person or property of another person or entity, or
"b. Under such circumstances that the law will imply an evil intent.
"(3) Wantonness. Conduct which is carried on with a reckless or conscious disregard of the rights or safety of others.
"(4) Clear and convincing evidence. Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level *249 of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.
"(5) Oppression. Subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights."
(Emphasis added.)
"Gross" is defined in Black's Law Dictionary 702 (6th ed.1990) as "not to be excused," "flagrant," "shameful."
Justice Almon, writing for the court in Hines, stated the following in construing the two statutes quoted above:
"Section 12-21-12(a) establishes the quantum of evidence necessary to submit an issue of fact to the trier of fact, when the sufficiency of the evidence to support an issue of fact is tested. Unless a higher standard is provided by statute, rule, or decision, substantial evidence is required to submit an issue of fact to the trier of fact. § 12-21-12(c). This statute limits the authority of a trial court to submit an issue of fact to the trier of fact.
"Section 6-11-20(a), however, limits the authority of the trier of fact to award punitive damagesthat is, a trier of fact may not award punitive damages unless the plaintiff proved by `clear and convincing' evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff. Thus, by its very language, § 6-11-20 does not define the standard for determining whether a genuine issue of fact, material to a claim alleged by the plaintiff, exists for the trial court to submit to the trier of fact; rather, it defines the standard of proof for determining whether the trier of fact has, or had, the authority to award punitive damages."
655 So.2d at 925 (emphasis omitted).
Thus, in this case, the trial court should have determined whether the evidence warranted submitting the issue of punitive damages to the jury, i.e., whether there was evidence of such quality and weight that a jury of reasonable and fairminded persons could find by clear and convincing evidence that the defendant consciously or deliberately engaged in fraud; then the court should have instructed the jury that, to award punitive damages, it must find that Rosa Iliff had proven by clear and convincing evidence that Hodges consciously or deliberately defrauded her.
In addition to the foregoing, the jury could have found from the evidence that Hodges backdated at least some of the documents relating to the second carthe odometer statement, the invoice, and the application for certificate of titlegiving them the date of August 10, when the Iliffs looked at the first car, rather than August 25, when Mrs. Iliff purchased the second car. Hodges acquired the second car from another dealership on August 22 or 23. This could support a finding of intentional fraud when considered with the Iliffs' evidence that Mrs. Iliff was told on August 25 that she was buying the car the Iliffs had seen on the 10th.
Further, there was evidence from which the jury could have found that Franklin Stephens bought the first car on August 22 or 23, but that neither of the Iliffs was at Hodges's place of business on either of those days. The Iliffs presented evidence that they did not go to Hodges's place of business between August 10 and August 25, and Stephens testified that he was not there after the 23d. Thus, the couple who Stephens says he saw may not have been the Iliffs. Stephens did not testify at trial, but only by deposition, because by the trial date he had moved to another state; thus, he was not present at trial to identify the Iliffs as the couple he had seen.
By comparison of the invoices, the Iliffs presented evidence that the first car cost Hodges $700 more than the second one, but Mrs. Iliff paid Hodges the same amount for the second car as the Iliffs had been quoted for the first one. The circuit judge, in directing a verdict against the claim for punitive damages, said: "I just don't think there is any evidence of intent to injure or clear and convincing evidence of that." The Iliffs' attorney responded by arguing that the "intent to injure" language comes from the definition of malice; see § 6-11-20(b)(2). The Iliffs did not allege malice, but only fraud. The § 6-11-20(b)(1) definition of "fraud" requires *250 "the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury." (Emphasis added.) A jury could find that Hodges switched the cars and concealed the switch with the intent of depriving Mrs. Iliff of the benefit of any lower purchase price they might have negotiated because of the $700 lower price Hodges had paid for the second car.
After reviewing the evidence presented at the trial, we conclude that there was sufficient evidence to support a finding, by clear and convincing evidence, that Hodges consciously and deliberately defrauded Rosa Iliff in the sale of the Mazda 626 and that the jury could have believed the fraud was malicious, oppressive, or gross. Thus, the trial court should have allowed the jury to consider the punitive damages claim.
The judgment of the Court of Civil Appeals is affirmed.
OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
HOOPER, C.J., and SHORES, KENNEDY, INGRAM, and BUTTS, JJ., concur.
HOUSTON, J., concurs in the result.
MADDOX, J., dissents.
HOUSTON, Justice (concurring in the result).
I dissented on original submission, stating that, in my judgment, the evidence was not "clear and convincing," as defined in Ala. Code 1975, § 6-11-20(b)(4), with respect to the fraud claims. However, after further examining the record and the briefs, and after indulging all reasonable inferences in favor of the plaintiff, I have concluded that the evidence was sufficient to submit the punitive damages claim to the jury. The jury could have awarded punitive damages based on a finding that the defendant had intentionally defrauded the plaintiff by selling her a different and less expensive automobile than the one for which she had originally negotiated, without informing her of the substitution of the automobile and without renegotiating the price that she had originally agreed upon. For this reason, I concur to affirm the judgment of the Court of Civil Appeals.
However, I believe that this Court, in Hines v. Riverside Chevrolet-Olds, Inc., 655 So.2d 909 (Ala.1994) (in which I did not participate), misinterpreted §§ 12-21-12 and 6-11-20. As I read Hines, a trial court, when presented with either a motion for a summary judgment or a motion for a directed verdict with respect to a plaintiff's claim for punitive damages, cannot look for guidance to the substantive evidentiary standard of proof set out by the legislature in § 6-11-20. This Court stated in Hines:
"Citing Coca-Cola Bottling Co. United, Inc. v. Stripling, 622 So.2d 882 (Ala.1993), and Big B, Inc. v. Cottingham, 634 So.2d 999 (Ala.1993), the defendants argue that the Hineses failed to present evidence, sufficient under the § 6-11-20 `clear and convincing' standard, that the defendants consciously and deliberately engaged in fraud; and they contend, therefore, that the circuit court properly entered the summary judgment on the claims of intentional suppression and fraudulent misrepresentation. The circuit court held, and the defendants now argue, the general proposition that § 6-11-20 requires a plaintiff, seeking both punitive and compensatory damages in an action based on claims of fraud, to present `clear and convincing evidence' that the defendant consciously and deliberately engaged in fraud, in order to submit a `claim of punitive damages' to the jury.
"The language of § 12-21-12(a) and (c) and § 6-11-20(a) belies the construction of § 6-11-20(a) advocated by the defendants. Section 12-21-12(a) establishes the quantum of evidence necessary to submit an issue of fact to the trier of fact, when the sufficiency of the evidence to support an issue of fact is tested. Unless a higher standard is provided by statute, rule, or decision, substantial evidence is required to submit an issue of fact to the trier of fact. § 12-21-12(c). This statute limits the authority of a trial court to submit an issue of fact to the trier of fact.

*251 "Section 6-11-20(a), however, limits the authority of the trier of fact to award punitive damagesthat is, a trier of fact may not award punitive damages unless the plaintiff proved by `clear and convincing' evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff. Thus, by its very language, § 6-11-20 does not define the standard for determining whether a genuine issue of fact, material to a claim alleged by the plaintiff, exists for the trial court to submit to the trier of fact; rather, it defines the standard of proof for determining whether the trier of fact has, or had, the authority to award punitive damages. This distinction becomes clearer when viewed in the context of the substantive law of punitive damages and our Rules of Civil Procedure.
"If, for example, a plaintiff alleges a claim of wantonness and demands in the ad damnum clause of the complaint only compensatory damages, § 12-21-12 clearly applies, and the plaintiff, to defeat the defendant's summary judgment motion, need only present substantial evidence creating a genuine issue of material fact. If, however, in the complaint the same plaintiff demands punitive, as well as compensatory, damages, does § 6-11-20 now apply, instead of § 12-21-12, to require the plaintiff to present clear and convincing evidence of wantonness to create a genuine issue of fact? The answer is `no.'
"By its very language, § 6-11-20 does not apply to determine whether, in opposition to a motion for a summary judgment, the plaintiff has presented sufficient evidence creating a genuine issue of fact to submit to the trier of fact as to one or more elements of a claim. Section 12-21-12, not § 6-11-20, governs the question whether the plaintiff has presented sufficient evidence creating a genuine issue as to a fact material to one or more elements of a claim. By contrast, § 6-11-20 establishes the degree of proof necessary to permit the trier of fact to award punitive damages. Just as, for example, a plaintiff must prove wantonness by a preponderance of the evidence to recover compensatory damages, the plaintiff must prove wantonness by clear and convincing evidence to authorize the trier of fact to award punitive damages.
". . . .
"The question whether a plaintiff proved the requisite wrongfulness by a sufficient weight of the evidence to allow the jury to award punitive damages is but one issue of damages for a trier of fact when it is presented a claim on which the law authorizes the award of punitive as well as compensatory damages. For example, a claim of wantonness is not a `claim of punitive damages'; rather, it is a claim on which, under our law, a trier of fact has the authority in its discretion to impose punitive damages. If sufficiently proved, a claim of wantonness can legally support either an award of compensatory damages or an award of both compensatory and punitive damages. Because punitive damages are awarded on a tort claim that ordinarily may otherwise be submitted to the jury on substantial evidence, the question whether there is clear and convincing evidence of wrongful conduct that will support an award of punitive damages does not arise until the trial, when a defendant objects to the submission to the jury of the question of punitive damages on the ground that clear and convincing evidence of the requisite wrongful conduct has not been presented. To construe §§ 12-21-12 and 6-11-20 to require a circuit court to enter a summary judgment on a claim of wantonness because the plaintiff did not present clear and convincing evidence of wantonness and because the trier of fact might in its discretion award punitive damages is simply unworkable and patently unjust, because the question of punitive damages is not the only question of damages for the trier of fact. The question of compensatory damages remains. If, in opposition to a motion for a summary judgment, the plaintiff presented substantial evidence creating a genuine issue of material fact and if the plaintiff proved his claim by at least a preponderance of the evidence, the plaintiff still has the right to *252 have the trier of fact determine whether he is entitled to compensatory damages.[[1]]
"The analysis above is supported and illustrated by the reasoning of this Court in Sears, Roebuck & Co. v. Harris, 630 So.2d 1018 (Ala.1993). In Sears, Roebuck & Co. the Court addressed the question whether the plaintiffs had presented clear and convincing evidence of wantonness, even though the defendants had raised the issue only in a motion for j.n.o.v., new trial, or remittitur. The question should ordinarily be raised before the case is submitted to the jury, because the jury should be instructed that it can award punitive damages only upon proof by clear and convincing evidence. In Sears, the circuit court so instructed the jury."
655 So.2d at 924-26. (Emphasis in Hines.)
The standards for reviewing rulings on summary judgment motions and for reviewing rulings on directed verdict motions are essentially the same. The purpose of both motions is to test the sufficiency of the evidence, to determine if any real issue exists. Both a summary judgment and a directed verdict are proper where there is a complete absence of proof on a material issue or where there are no disputed questions of fact on which reasonable people could differ. See Cook v. Trinity Universal of Kansas, 584 So.2d 813 (Ala.1991); see also Donald v. City National Bank of Dothan, 295 Ala. 320, 323, 329 So.2d 92, 94 (1976), wherein Justice Shores, writing for this Court, noted:
"Nevertheless, summary judgment does serve a useful purpose. The procedure is designed to pierce the pleadings and determine if causes or defenses lack real merit. It is said `... the rule is intended to prevent vexation and delay, improve the machinery of justice, promote the expeditious disposition of cases, and avoid unnecessary trials when no genuine issues of fact have been raised.' 10 C. Wright & R. Miller, Federal Practice and Procedure: Civil § 2712 (1973)."[2]
It appears to me that the rule enunciated in Hines completely emasculates Rules 50 and 56, Ala.R.Civ.P., insofar as they were designed to ferret out meritless claims for punitive damages. In my view, it was certainly not within the legislature's contemplation in enacting § 6-11-20 that a claim for punitive damages could be submitted to the jury on less than clear and convincing evidence, as defined in § 6-11-20(b)(4), and that a post-verdict motion for a judgment notwithstanding the verdict would constitute the first opportunity for the trial court to consider the sufficiency of a claim for punitive damages. That the legislature did not intend such an illogical procedure is evident from the plain wording of § 12-21-12(c):
"With respect to any issue of fact for which a higher standard of proof is required, whether by statute, or by rule or decision of the courts of the state, substantial evidence shall not be sufficient to carry the burden of proof, and such higher standard of proof shall be required with respect to such issue of fact."
In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986), the United States Supreme Court, interpreting Rules 50 and 56, Fed.R.Civ.P., held that "the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard *253 of proof that would apply at the trial on the merits." I think that this is what the legislature intended when it enacted § 6-11-20, and this Court, in fact, has so held. See, e.g., Big B, Inc. v. Cottingham, 634 So.2d 999 (Ala.1993); Pitt v. Century II, Inc., 631 So.2d 235 (Ala.1993); Coca-Cola Bottling Co. v. Stripling, 622 So.2d 882 (Ala.1993); Berry v. Fife, 590 So.2d 884 (Ala.1991). I assume that Hines overruled these cases (and any other cases so holding) sub silentio. In any event, I believe that the confusion created by the Hines decision is apparent even in the present case, for the majority relies on Hines to hold that "the trial court should have determined whether the evidence warranted submitting the issue of punitive damages to the jury, i.e., whether there was evidence of such quality and weight that a jury of reasonable and fair-minded persons could find by clear and convincing evidence that the defendant consciously or deliberately engaged in fraud." 680 So.2d at 249. (Emphasis added.) Thus, the majority now recognizes that a plaintiff must come forward with clear and convincing evidence to support a punitive damages claim in order to have that claim submitted to a jury and avoid an adverse judgment as a matter of law. Therefore, the majority has sub silentio overruled the above-quoted portion of Hines. I salute this and proclaim that Hines is overruled.
For the foregoing reasons, I concur in the result only.
NOTES
[1] I note at this point that damage is an essential element of a plaintiff's cause of action. If a plaintiff is able to present substantial evidence in support of his claim of, say, wantonness or fraud, he has an absolute right to have the trier of fact consider his claim for compensatory damages. However, if that plaintiff cannot present in support of his claim evidence that the trier of fact could find clear and convincing, as defined in § 6-11-20(b)(4), then his claim for punitive damages must fail, as a matter of law. The plaintiff's compensatory damages claim is unaffected. I can discern no reason for not distinguishing between compensatory and punitive damages for purposes of applying the "clear and convincing" evidence standard.
[2] Because Rules 50 and 56, Ala.R.Civ.P., serve the same purpose, albeit at different stages of the litigation, I do not read Hines as making a distinction between a summary judgment and a directed verdict insofar as the standard of proof is concerned. It would certainly make no sense to apply the substantial evidence standard to a punitive damages claim at the summary judgment stage, and then to apply the clear and convincing evidence standard to that same claim at the directed verdict stage.